UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| YOLANDA WEALTHBERG, | : |
| | : |
| *Plaintiff*, | : CASE NO. 3:20-cv-01314-VAB |
| | : |
| V. | : |
| | : |
| GE CREDIT UNION a/k/a GENERAL | : |
| ELECTRIC EMPLOYEES FEDERAL | : |
| CREDIT UNION and ELSIE VRABEL, | : NOVEMBER 19, 2020 |
| | : |
| *Defendants*. | : |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

On May 13, 2020, Plaintiff Yolanda Wealthberg signed a Settlement Agreement ███

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████ Consequently, the Court does not have

jurisdiction over Plaintiff's claims and, accordingly, Defendants GECU and its employee, Elsie

Vrabel ("Vrabel"), respectfully move to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P.

12(b)(1).

Separately, the Complaint fails to state claims upon which relief can be granted and,

accordingly, Defendants additionally move to dismiss those claims pursuant to Fed. R. Civ. P. 12(b)(6).  For instance, the First Count, which alleges violation of the FCRA, fatally fails to identify under which subsection of the FCRA Plaintiff brings her claim and seeks redress for conduct for which the FCRA does not provide a private right of action.  Moreover, assuming for the sake of argument that Plaintiff's FCRA claim is sufficient, it preempts the remaining claims of the Complaint, which are state statutory and common law claims premised upon the same conduct as alleged in the FCRA claim.  Should the Court consider the remaining claims, however, it should dismiss counts two, four, and five for failure to state a claim.  Specifically, the Second Count, alleging violation of the Connecticut Unfair Trade Practices Act ("CUTPA") does not allege that Defendants engaged in deceptive practices in the conduct of "Trade" or "Commerce" as defined in the statute; nor does it allege that Plaintiff is a consumer of credit reporting.  Additionally, Connecticut does not recognize a cause of action for "injurious falsehood," which is the claim Plaintiff asserts in the Fourth Count of the Complaint.  Lastly, Plaintiff has failed to sufficiently allege extreme and outrageous conduct to state a claim for intentional infliction of emotional distress in Count Five.  Therefore, for these reasons, as discussed in detail below, the Court should grant Defendants' Motion to Dismiss.

## I.  <u>FACTS</u>

Plaintiff alleges that she is a customer of and borrower from defendant GECU and that Vrabel is GECU's Collections Manager.  (*See* Compl. at ¶¶ 9–10, 12, 15.)  Plaintiff claims that she is the sole member and founder of National Healthcare Workers Association, LLC ("NHWA"). (*Id.* at ¶ 9.)

Plaintiff claims that on May 29, 2019, NHWA purchased a Maserati and, as principal of NHWA, Plaintiff obtained a loan from GECU for the vehicle purchase for $99,050 (the "Maserati

Loan"). (*Id.* at ¶ 15.) The Maserati was to serve as collateral for the loan and NHWA was to provide the title to the vehicle to GECU. (*Id.* at ¶ 16.) Plaintiff sold the Maserati in December 2019. (*See id.* at ¶¶ 19, 23.) Plaintiff claims that she sold the Maserati with the approval of GECU, which allegedly told her to hold the sales proceeds until she had the entire amount due to pay-off the loan. (*Id.* at ¶ 22.) Plaintiff alleges that she sent the payment to "GM Financial" rather than to GECU, and that when GECU learned of the mistake, it called her a "fraud" and claimed she sold the vehicle without its knowledge or consent. (*See id.* at ¶¶ 24–26.) Plaintiff claims that after GECU called her a "fraud," she contacted Vrabel and requested that she intervene. (*Id.* at ¶ 27.) Plaintiff claims that Vrabel began to threaten and harass her and threatened her with criminal and civil actions. (*Id.* at ¶ 28.) She also claims that Vrabel rejected an offer of payment by Plaintiff and instead stated that GECU would sue for treble damages and press criminal charges. (*Id.* at ¶¶ 29–30.)

Plaintiff alleges that in January 2020, in an attempt to unduly influence her to settle the matter related to the Maserati loan, GECU contacted the Federal Bureau of Investigation and Milford Police Department in an attempt to pursue criminal charges against her. (*Id.* at ¶ 32.) Plaintiff alleges that GECU refused her offer of full payment until it received a full release for its illegal conduct. (*See id.* at ¶ 34.)

Plaintiff claims that GECU wrongfully recoded property located in West Haven, CT ("West Haven Property") as delinquent and 30 days past due for the months May 2017 through March 2020, and coded the property as a charge off on a mortgage that was already paid off. (*Id.* at ¶¶ 36, 75.) She claims also that GECU recoded a property located at 101 Lookout Hill, Milford, CT ("Milford Property") as delinquent and 30 days past due for the months June 2019 through March 2020, when there was no delinquency. (*Id.* at ¶ 76.) Plaintiff alleges that GECU's actions

were designed to provide "more ammunition" to force Plaintiff to settle and release GECU for all of its "violations." (*Id.* at ¶ 38.)   Plaintiff states that Vrabel agreed to withdraw criminal charges. (*Id.* at ¶¶ 40, 45.)

Plaintiff also alleges that that GECU submitted false credit reports as part of its harassment campaign and used the false FBI and Milford Police reports to pressure Plaintiff into a settlement and fully releasing GECU from any claims.  (*See id.* at ¶¶ 42–43.)

On March 15, 2020, Plaintiff alleges that GECU and Vrabel directed the repossession of a vehicle owned by Real Estate Network Center, a company affiliated with Plaintiff, and used by Plaintiff's mother.  (*Id.* at ¶ 51.)  Plaintiff alleges that GECU and Vrabel directed the release of the vehicle a few days later, but continued the harassment of Plaintiff by claiming that Plaintiff let the insurance lapse on the vehicle and required her to pay over $2,400 in additional insurance to stop a second repossession.  (*Id.* at ¶¶ 57–66.)

Plaintiff also claims that GECU reported to credit agencies that Plaintiff was past due on various business loans, personal lines of credit, and a Visa credit card when there was never a single late payment.  (*Id.* at ¶¶ 66, 69–71.)

Plaintiff states that on March 19, 2020, GECU initiated a civil lawsuit against NHWA for failing to submit the title for the Maserati to GECU and alleging breach of contract, misrepresentation and conversion (the "Maserati Action").  (*Id.* at ¶ 17.)[1]  On March 26, 2020, Plaintiff states that GECU sent her the terms it would accept to resolve the Maserati matter including dropping the criminal "charges" in exchange for payments for the Maserati and for the

---

[1] *See GE Credit Union a/k/a General Elec. Employees Federal Credit Union v. Welthberg, et al.,* Docket No. AAN-CV-20-6038011-S, J.D. Ansonia/Milford.  The Court may take judicial notice of the public docket.  *See Shakir v. Derby Police Dep't*, No. 3:11-CV-1940 (AVC), 2015 WL 13860933, at *2 n.3 (D. Conn. Mar. 31, 2015) (citing *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); FED. R. EVID. 201)).

West Haven Property for a full release of all claims.  (*Id.* at ¶¶ 44–45.)  Plaintiff further claims that

GECU and Vrabel also sent Plaintiff's other GECU accounts, which included her related business

accounts, into collection in order to impact Plaintiff's credit score and to prevent her from being

able to complete routine personal and business activities.  (*Id.* at ¶¶ 73–76, 80, 86, 87, 94–95.)

Plaintiff alleges that Vrabel realized her activities toward Plaintiff were illegal and attempted to

blame the credit bureaus for the false reports.  (*Id.* at ¶¶ 92, 103, 105–07.)

Plaintiff also alleges that GECU and Vrabel made continuing threats to her causing her to

suffer emotional and physical problems including suffering panic attacks, anxiety, and fatigue

resulting in hospitalization.  (*Id.* at ¶¶ 109–13.)  Plaintiff also alleges that GECU and Vrabel's

conduct caused financial damages including lower credit scores, rejected loan applications, loss of

income and "systematic destruction of her businesses."  (*Id.* at ¶¶ 114–124.)

## II.  <u>LEGAL STANDARD</u>

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1)

when the district court lacks the statutory or constitutional power to adjudicate it."  *Hoops v. Key*

*Span Energy*, 794 F. Supp. 2d 371, 375 (E.D.N.Y. 2011) (quoting *Makarova v. United States*, 201

F.3d 110, 113 (2d Cir. 2000)).  "The standard for reviewing a 12(b)(1) motion to dismiss is

essentially identical to the 12(b)(6) standard, except that '[a] plaintiff asserting subject matter

jurisdiction has the burden of proving by a preponderance of the evidence that it exists.'"  *Id.* at

375–76 (quoting *Makarova*, 201 F.3d at 113).  Key to a motion brought pursuant to Fed. R. Civ.

P. 12(b)(1) is that "evidence outside the pleadings may, if necessary, be considered."  *Mercer v.*

*Schriro*, 337 F. Supp. 3d 109, 122 (D. Conn. 2018); *see also Tandon v. Captain's Cove Marina of*

*Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).

"Under the now well-established *Twombly* standard, a complaint should be dismissed only

if it does not contain enough allegations of fact to state a claim for relief that is 'plausible on its face.'" *Hoops*, 794 F. Supp. 2d at 376 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In deciding a 12(b)(6) motion to dismiss, "consideration is limited to the factual allegations in plaintiffs' amended complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.,* 987 F.2d 142, 150 (2d Cir. 1993) (citations omitted); *Patrowicz v. Transamerica HomeFirst, Inc.,* 359 F. Supp. 2d 140, 144 (D. Conn. 2005).  "[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Hoops*, 794 F. Supp. 2d at 376 (citation and internal quotation marks omitted).  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss and [d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation and internal quotation marks omitted).  Therefore, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief."  *Id.* (citation omitted).

## III.   <u>ARGUMENT</u>

Plaintiff entered a Settlement Agreement that contained ███████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████   therefore, this Court lacks subject matter jurisdiction and should dismiss the Complaint in its entirety.

Alternatively, the Complaint fails to state plausible claims for relief. Specifically, it is unclear what subsection of the FCRA that Plaintiff bases her claim on because the Complaint is simply devoid of any allegations citing to it. Furthermore, to the extent Plaintiff seeks redress for conduct for which the FCRA does not provide a private right of action, the Court should dismiss the First Count. Even in the unlikely event that Plaintiff's FCRA claim survives, it preempts the remaining claims in the Complaint and, as such, the Court should dismiss counts two through six for this reason alone. In addition, the Second Count, alleging violation of the Connecticut Unfair Trade Practices Act, is inadequately pleaded. Moreover, Connecticut does not recognize the cause of action for "injurious falsehood," which is the claim Plaintiff asserts in the Fourth Count of the Complaint. Lastly, Plaintiff has failed to allege sufficiently extreme and outrageous conduct to state a claim for intentional infliction of emotional distress in the Fifth Count of the Complaint. Even if the Court had jurisdiction—which it does not—it should dismiss Counts Two through Six for failure to state a claim.

### a. The Court Lacks Subject Matter Jurisdiction

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████.[2]   As such, this Court lacks jurisdiction to consider the claims Plaintiff asserts in her Complaint.

"It is well established that settlement agreements are contracts and must therefore be

---

[2] A copy of the Settlement Agreement is attached as **Exhibit A**. Plaintiff references the Settlement Agreement throughout her Complaint (*see generally* Compl.) and, therefore, the Court may consider it in deciding this Motion. *See Int'l Audiotext Network, Inc. v. AT&T*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam) (citing *Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991), *cert. denied*, 503 U.S. 960 (1992)).

construed according to general principles of contract law." *Dechberry v. New York City Fire Dep't*, 124 F. Supp. 3d 131, 141 (E.D.N.Y. 2015) (quoting *Tromp v. City of New York*, 465 F. App'x 50, 51 (2d Cir. 2012)). "Where the language of [a] release is clear, effect must be given to the intent of the parties as indicated by the language employed." *Id.* at 141–142 (quoting *Tromp*, 465 F. App'x at 51). When a general release is unambiguous on its face and clearly encompasses the matters that a plaintiff argues supports her claims, it will preclude the plaintiff from asserting those claims. *See Tuccio Development, Inc. v. Town of Brookfield*, No. 3:08-CV-1016 (MRK), 2010 WL 2794192, at *13 (D. Conn. July 14, 2010) (citing *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 463 (2d Cir. 1998)) (additional citation omitted).

"Courts in this Circuit have consistently barred claims where a plaintiff enters into a settlement, executes a general release, and then brings an additional lawsuit alleging similar claims that could have been alleged in the prior settled action." *Dechberry*, 124 F. Supp. 3d at 142 (citing *Tromp*, 465 F. App'x at 52; *Castro v. City of New York*, No. 11-CV-5379, 2012 WL 5289490, at *3 (E.D.N.Y. June 26, 2012) *report and recommendation adopted*, 2012 WL 5289517 (E.D.N.Y. Oct. 22, 2012); *Lewis v. City of New York*, No. 10-CV-3266, 2011 WL 3273939, at *2 (E.D.N.Y. July 29, 2011)). "Indeed, '[w]ords of general release are clearly operative not only as to all controversies and causes of action between the releasor and releasees which had, by that time, actually ripened into litigation, but to all such issues which might then have been adjudicated as a result of pre-existent controversies.'" *Id.* (quoting *Tromp*, 465 F. App'x at 52). "[W]hen general language is used in the releasing document, the release is to be construed most strongly against the releasor." *Id.* (quoting *Castro*, 2012 WL 5289490, at *3).

████████████████████████████████████████

████████████████████████████████████████



,

thereby depriving this Court of jurisdiction to hear Plaintiff's case.  Accordingly, the Court should

dismiss Plaintiff's Complaint for lack of jurisdiction.  *See Geliman, S.A. v. Design Ideas, Ltd.*, No.

05-Civ-7102 (LTS)(THK), 2008 WL 5636328, at *9–10 (S.D.N.Y. Feb. 11, 2008), *report and

recommendation adopted*, 2009 WL 349157 (S.D.N.Y. Feb. 11, 2009) (concluding that settlement

agreement extinguished plaintiff's standing to sue and, therefore, court lacked subject matter

jurisdiction).

### b.  Plaintiff Failed To Plead Multiple Counts Of The Complaint Adequately

Assuming *arguendo* that the Court has jurisdiction, multiple claims contained in the

Complaint fail to state plausible claims for relief.  First, Plaintiff alleges a violation of the FCRA

in the First count of the Complaint; however, it is unclear whether Plaintiff is alleging the violation

based on GECU's alleged provision of inaccurate information to the credit reporting agencies or

based on GECU's alleged failure to investigate adequately Plaintiff's claim of inaccurate

information in her credit report.  To the extent she is claiming a violation of the FCRA based on

the former, such claim is inadequate as a matter of law as there does not exist a private right of action for inaccurate reporting. Second, to the extent Plaintiff has pleaded adequately a claim under the FCRA, the FCRA preempts the remaining counts of her Complaint as the remaining claims are based on the same conduct that gives rise to the FCRA claim.

The FCRA preempts Plaintiff's state statutory and common law claims and, thus, the analysis can and should end there. However, should the Court disagree, several of the counts fail to state a claim upon which relief can be granted. First, the Second Count of the Complaint, which alleges violation of the CUTPA is pleaded insufficiently. Second, Plaintiff raises a claim for "injurious falsehood" in the Fourth Count of her Complaint; however, Connecticut courts do not recognize a cause of action of "injurious falsehood." Third, Plaintiff asserts a claim for intentional infliction of emotional distress in the Fifth Count; however, she fails to plead sufficiently that Defendants' conduct was extreme and outrageous. The Court should dismiss these counts of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

> i. There is no Private Right of Action for Plaintiff's Claims of Inaccurate Reporting

15 U.S.C. § 1681s contains two subsections, only one of which provides a private right of action. *See Howard v. Municipal Credit Union*, NO. 05-Civ-7488 (LAK), 2008 WL 782760, at *7 (S.D.N.Y. Mar. 25, 2008). Specifically, "[s]ubsection 1681s-2(a) provides that a furnisher of information has a duty to report information accurately to credit reporting agencies, and also has an ongoing duty to update and correct the information that it reports." *Id.* "These duties, however, are only enforceable by a government agency or official; no private right of action is available under this provision." *Id.* (citing 15 U.S.C. § 1681s-2(a); *Prakash Homecomings Fin.*, No. 05-CV-2895 (JFB)(VVP), 2006 WL 2570900, at *5 (E.D.N.Y. Sept. 5, 2006)). *See also Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 151 (2d Cir. 2012).

In *Howard*, the plaintiff alleged that the defendants, a credit union and several of its employees, violated the FCRA by reporting falsely to the three major credit bureaus for seven months that the plaintiff had failed to make a payment on an auto loan. *Howard*, 2008 WL 782760, at *2. The plaintiff asserted that the defendants reported the lack of payment despite the plaintiff presenting them with a cashed check for the purportedly missed payment. *Id.* The plaintiff also claimed that the defendants continued to charge him monthly fees for an account that he had closed, which resulted in the defendants reporting falsely to the credit reporting agencies that the plaintiff's account was in arrears for over two years. *Id.* The plaintiff maintained that he reported the incorrect information to the defendant credit union but that the credit union never satisfactorily resolved the issues despite telling the plaintiff it made corrections, which resulted in several adverse effects on the plaintiff's credit and financial status. *Id.* The court dismissed the FCRA claim to the extent the plaintiff alleged that the defendants "proffered fraudulent information to the three major credit reporting agencies . . . causing an adverse affect [sic] on [the plaintiff's] credit report rating," reasoning that such allegations "would implicate the duty of accurate reporting," which does not provide a private right of action. *Id.* at *7.

Here, Plaintiff alleges that Defendants "failed to follow and establish reasonable procedures to assure maximum possible accuracy in the preparation of Wealthberg's consumer report and credit file published and maintained." (Compl. at ¶ 126.) In several other paragraphs of the Complaint, Plaintiff alleges that Defendants supplied false and/or erroneous information to the credit reporting agencies. (*See id.* at ¶¶ 128, 130, 131, 134.) Plaintiff does not specify pursuant to what section of the FCRA she brings her claim.[3] However, to the extent that she is seeking

---

[3] Indeed, because many sections of the FCRA do not contain a private right of action, Plaintiff's failure to identify which specific subsection of the FCRA provides the basis for her claim renders dismissal of the FCRA claim appropriate. *See, e.g.*, *Botti v. Trans Union*, No. C 11-04519 (SBA), 2012 WL 1595109, at *3 (N.D. Cal. May 4, 2012) ("Because the complaint does not identify a specific provision of the [FCRA] that Defendant

redress for Defendants' alleged false reporting to the credit reporting agencies, such claim "would implicate the duty of accurate reporting" for which the FCRA does not recognize a private right of action. *See Howard*, 2008 WL 782760, at *7. Accordingly, such claim is inadequate and fails as a matter of law.

    ii. <u>If Plaintiff has Stated a Claim under the FCRA, the Remaining Counts of the Complaint are Preempted and Should be Dismissed[4]</u>

Section 1681t of the FCRA provides, in relevant part, as follows:

"(b) No requirement or prohibition may be imposed under the laws of any State–

    (1) with respect to any subject matter related under– . . .

        (F) section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies . . . .

The Second Circuit's reading of the phrase "no requirement or prohibition" includes both state statutory and common law claims. *See Sprague v. Salisbury Bank & Tr. Co.*, No. 3:18-CV-001487 (VLB), 2019 WL 4246601, at *8 (D. Conn. Sept. 5, 2019), *aff'd*, 969 F.3d 95 (2d Cir. 2020) (citing *Macpherson v. J.P. Morgan Chase Bank, N.A.*, 665 F.3d 45, 47 (2d Cir. 2011)) (additional citation omitted). Specifically, "§ 1681t(b)(1)(F) preempts any recovery for damages based on allegations of erroneous or otherwise improper furnishing [of information to consumer reporting agencies] – regardless of the particular statute or common law theory [asserted]." *Galper v. J.P. Morgan Chase Bank, N.A.*, 802 F.3d 437, 447–49 (2d Cir. 2015) (emphasis omitted). In other words, § 1681t(b)(1)(F) preempts "laws that regulate the responsibilities of persons who furnish

---

[4] Even if the Court dismisses the FCRA claim pursuant to Fed. R. Civ. P. 12(b)(6) in its entirety, it may still chose to analyze whether the FCRA preempts the state law claims. *Sprague v. Salisbury Bank & Tr. Co.*, No. 3:18-CV-001487 (VLB), 2019 WL 4246601, at *7 (D. Conn. Sept. 5, 2019), *aff'd*, 969 F.3d 95 (2d Cir. 2020) (citing *Andresakis v. Capital One Bank (USA), N.A.*, No. 09-Civ-08411 (DAB)(FM), 2011 WL 846830, at *5 (S.D.N.Y. Feb. 3, 2011)).

violated . . . Plaintiff has failed to state a cognizable claim under the FCRA"); *Kelley v. Mort. Electronic Regis. Sys., Inc.*, 642 F. Supp. 2d 1048, 1057 (N.D. Cal. 2009) (dismissing claim because the plaintiff failed to identify specific provision of statute that the defendant violated).

information to consumer reporting agencies." *Sprague*, 2019 WL 4246601, at *9 (citing *Galper*, 802 F.3d at 447–49).

In *Sprague*, the plaintiffs alleged violation of the FCRA based on the defendant's failure to correct errors in information it provided to credit reporting agencies, despite the defendant's acknowledgement of the errors. *See id.* at *1. The plaintiffs also brought claims for violation of the CUTPA, defamation, and intentional infliction of emotional distress. *Id.* at *1–2. The court dismissed the state statutory and common law claims, stating that "all of Plaintiffs' state law claims arose from the same conduct that gave rise to their FCRA claims" and that "[t]hese state law claims are thus plainly preempted by the FCRA because they solely involve the responsibilities under Section 1681s-2 of persons who furnish information to consumer reporting agencies." *Id.* at *10 (citations and internal quotation marks omitted).

Here, the conduct that gave rise to Plaintiff's claim for violation of the FCRA is the same conduct on which she bases her claims for violation to CUTPA, defamation, injurious falsehood, intentional infliction of emotional distress, and violation of the CCCA. Although counts two through six do not use language identical to the allegations in the FCRA claim, Plaintiff's grounds for asserting each claim is premised on Defendants' alleged reporting of false and/or inaccurate information to the credit reporting agencies and their subsequent failure to correct said falsities or inaccuracies. All of the allegations in counts two through six solely concern Defendants' responsibilities as persons who furnish information to credit reporting agencies and, therefore, are preempted by the FCRA. Accordingly, counts two through six fail as a matter of law and the Court should dismiss those claims with prejudice.

iii.   Plaintiff's Claim for Violation of CUTPA is Insufficient

CUTPA makes it unlawful to engage in "deceptive acts or practices in the conduct of any

trade or commerce." Conn. Gen. Stat. § 42-110b(a).  CUPTA defines "Trade" and "Commerce" as "the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state." Conn. Gen. Stat. § 42-110a(4).

Here, Plaintiff has not alleged that GECU or Vrabel engaged in any deceptive practices in the conduct of any "trade" or "commerce" as defined in the CUTPA.  Nor can she, as GECU and Vrabel are not engaged in "the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state." *Id.*  In addition, Plaintiff does not allege that she is a consumer of credit reporting.  As a result of these inadequacies, the Court should dismiss the Second Count.

iv.  Connecticut Courts do not Recognize a Cause of Action of Injurious Falsehood

The Restatement (Second) of Torts defines the cause of action of injurious falsehood as follows:

> One who publishes a false statement harmful to the interests of another is subject to liability for pecuniary loss resulting to the other if (a) he intends for publication of the statement to result in harm to interests of the other having a pecuniary value, or either recognizes or should recognize that it is likely to do so, and (b) he knows that the statement is false or acts in reckless disregard of its truth or falsity.

Restatement (Second) of Torts § 623A, p. 334 (1977).  "The action for injurious falsehood is obviously similar in many respects to the action for defamation.  "The action for injurious falsehood is to protect economic interests of the injured party against pecuniary loss; it arose as an action on the case for the special damage resulting from the publication." *Time Was Garage, LLC v. Giant Steps, Inc.*, No. LLI-CV10-6002895, 2011 WL 1888096, at *6 (Conn. Super. Ct. Apr. 29, 2011) (citation omitted).  "Like trade libel, injurious falsehood has not been treated as a distinct

tort by Connecticut appellate courts." *Id.* (quoting *Nat'l Distributor Sys., Inc. v. Steinis*, No. NNH-CV98-415780-S, 1999 WL 476686, at *3 (Conn. Super. Ct. June 25, 1999)). "Indeed . . . the tort of injurious falsehood has received little treatment in the opinions of Connecticut trial judges." *Id.* (quoting *Steinis*, 1999 WL 476686, at *3).

The Fourth Count of Plaintiff's Complaint attempts to assert a cause of action that is not recognized in Connecticut. The Court in *Time Was Garage, LLC* undertook a very thorough and detailed discussion of the distinction between claims for defamation and injurious falsehood, but concluded that "the import of that distinction, however, does not vitiate the fact that Connecticut has not yet recognized the tort of injurious falsehood." *Id.* at *9. In *Schiavone v. Urbain*, No. FBT-CV11-6021020-S, 2013 WL 1189417, at *3–4 (Conn. Super. Ct. Mar. 1, 2013), the court analyzed an "injurious falsehood" claim, but stated explicitly that "[a]n action for publication of injurious falsehood has never been recognized by any Connecticut appellate court as a distinct cause of action." The Plaintiff has failed to state a plausible claim for relief as "injurious falsehood" is not a distinct cause of action in Connecticut and, therefore, the Court should dismiss Count Four for failure to state a claim.

> v. Plaintiff has Failed to Allege Adequately that Defendants' Conduct was Extreme and Outrageous

The Connecticut Supreme Court has stated the very high standard necessary for claims of intentional infliction of emotional distress. Specifically, in order to prevail on a claim for intentional infliction of emotional distress,

> [i]t must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. . . . Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine. . . . Only where reasonable minds disagree does

17

it become an issue for the jury. . . .

> Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society. . . . Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous! . . . Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress.

*Perez-Dickson v. Bridgeport*, 304 Conn. 483, 526–27 (2012) (quoting *Appleton v. Bd. of Education*, 254 Conn. 205, 210–11 (2000)) (citations and internal quotation marks omitted). The court performs a gatekeeping function, rather than a fact-finding function in assessing "whether, as a matter of law, the alleged behavior fits the criteria required to establish a claim premised on the intentional infliction of emotional distress." *Tracy v. New Milford Public Schools*, 101 Conn. App. 560, 569, *cert. denied*, 284 Conn. 910 (2007). This requires the court to "determine whether the allegations of the complaint . . . set forth behaviors that a reasonable factfinder could find to be extreme and outrageous." *Id.*

In *Time Was Garage, LLC*, the plaintiffs alleged that the defendants "designed and carried out a campaign of harassment aimed at the plaintiffs which included making false accusations to neighbors and local, state and federal authorities" of various contamination issues, as well as violations of local ordinances and state and federal laws. *Time Was Garage, LLC*, 2011 WL 1888096, at *2. The plaintiffs alleged also that the defendants "made many false complaints to local and state authorities with the intent to frustrate the plaintiff's business ventures" and that they "made many complaints to local agencies, which complaints, although having a veneer of truth, were done with the ulterior motives of causing the plaintiffs to go out of business and ultimately lose the 417 Main Street property." *Id.* at *4. The court struck the counts asserting

18

intentional infliction of emotional distress, reasoning, "the allegations in the plaintiffs' complaint do not rise to the high threshold necessary to allege a cause of action for intentional infliction of emotional distress. *Id. See also Hunt v. Pelliccia*, No. NNH-CV03-0479776-S, 2004 WL 424212, at *4 (Conn. Super. Ct. Feb. 20, 2004) (concluding "alleged conduct of complaining to governmental authorities about violations of local laws or ordinances regarding the plaintiffs' property, and the allegations concerning the defendants' use of vulgar language and obscene gestures do not constitute intentional infliction of emotional distress or extreme or outrageous behavior.").

Here, Plaintiff's allegations of intentional infliction of emotional distress are far from what is necessary to plead sufficiently extreme and outrageous conduct.  Plaintiff and Defendant were in a commercial relationship of borrower-lender.  Accepting as true—for purposes of this motion only—Plaintiff's claims that GECU made false reports to local and federal authorities, incorrectly reported Plaintiff's information to credit bureaus, and used offensive language when speaking about Plaintiff, the Complaint fails to plead conduct that would lead a member of society to exclaim "Outrageous!"  Instead, the Complaint reflects an alleged dispute between borrower and lender, and not conduct that goes beyond all possible bounds of decency in a civilized society. Even if Defendants' conduct resulted in Plaintiff having hurt feelings or feeling offended, such conduct does not rise to the level of extreme and outrageous needed to support a claim of intentional infliction of emotional distress.  Therefore, the Court should dismiss Count Five of the Complaint for failure to state a claim.

## IV.   <u>CONCLUSION</u>

The Plaintiff entered into a valid and enforceable Settlement Agreement, ████████ ██████████████████████████████████████████████ As such, the Court lacks subject

matter jurisdiction over this case, warranting dismissal.  In addition, the Complaint fails to state claims upon which relief can be granted and, accordingly, Defendants respectfully move to dismiss those claims.  For instance, the First Count, which alleges violation of the FCRA, does not specify pursuant to which subsection Plaintiff brings her claim and seeks redress for conduct for which the FCRA does not provide a private right of action.  Moreover, to the extent Plaintiff's FCRA claim is sufficient, it preempts the remaining claims of the Complaint, which are state statutory and common law claims premised upon the same conduct as allege in the FCRA claim.  Should the Court consider the remaining claims, however, it should dismiss counts two, four, and five for failure to state a claim.  Specifically, the Second Count, alleging violation of the CUTPA does not allege that Defendants engaged in deceptive practices in the conduct of "Trade" or "Commerce" as defined in the statute; nor does it allege that Plaintiff is a consumer of credit reporting.  Additionally, Connecticut does not recognize a cause of action for "injurious falsehood" as alleged in the Fourth Count.  Lastly, Plaintiff has failed to sufficiently allege extreme and outrageous conduct to state a claim for intentional infliction of emotional distress in Count Five.  Accordingly, for the foregoing reasons, the Court should grant Defendants' Motion to Dismiss.

Respectfully Submitted,

THE DEFENDANTS,
GE CREDIT UNION A/K/A GENERAL
ELECTRIC EMPLOYEES FEDERAL CREDIT
UNION and ELSIE VRABEL

By  */s/ Thomas C. Blatchley*
    Thomas C. Blatchley
    Aubrey E. Blatchley
    Gordon & Rees Scully Mansukhani, LLP
    95 Glastonbury Boulevard, Suite 206
    Glastonbury, CT 06033
    Phone: 860-494-7525
    Fax: 860-560-0185
    Email: tblatchley@grsm.com
           ablatchley@grsm.com

## <u>CERTIFICATION</u>

I hereby certify that on this 19th day of November, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filings.  Parties may access this filing through the Court's CM/ECF System.


*/s/ Thomas C. Blatchley*
Thomas C. Blatchley