UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| YOLANDA WEALTHBERG, | : |
| | : |
| *Plaintiff*, | : CASE NO. 3:20-cv-01314-VAB |
| | : |
| v. | : |
| | : |
| GE CREDIT UNION a/k/a GENERAL ELECTRIC EMPLOYEES FEDERAL CREDIT UNION and ELSIE VRABEL, | : |
| | : JANUARY 7, 2021 |
| | : |
| *Defendants*. | |

**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS**

Plaintiff's Opposition to Defendants' Motion to Dismiss asks the Court to deny the Motion based on evidence that is unreliable, unauthenticated, irrelevant, and self-serving. Plaintiff attempts to muddy the waters with red herrings and purported evidence that has no bearing on the Court's determination of whether it has subject matter jurisdiction or whether Plaintiff signed the settlement agreement. Plaintiff submits self-serving affidavits and several hearsay statements, all of which are utterly insufficient to defeat the existence of a fully executed and notarized settlement agreement ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[1] Plaintiff also overlooks key provisions of the settlement agreement that answer the question of why Defendant GE Credit Union a/k/a General Electric Employees Federal Credit Union ("GECU") ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Any challenge to the settlement agreement is more appropriately litigated in the Maserati Action. Based on the evidence before this Court, the settlement agreement is valid and enforceable, ▮▮▮▮▮▮▮▮▮▮▮▮▮ and deprives this Court of jurisdiction. Plaintiff has also failed to refute convincingly Defendants'

---

[1] Pursuant to the Court's order granting Defendants' Motion to Seal (*see* Doc. Nos. 19 and 21), Defendants file this Reply under seal.

1

arguments that Plaintiff has failed to plead adequately her claims. Accordingly, the Court should grant Defendants' Motion to Dismiss.

## I. THE SETTLEMENT AGREEMENT DEPRIVES THIS COURT OF JURISDICTION

Plaintiff maintains that the fully executed and notarized settlement agreement that Defendants appended to their Memorandum of Law in Support of Motion to Dismiss ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. (Pl.'s Opp. to Mot. to Dismiss ("Pl.'s Opp.") at 8.)[2] In support of this assertion, she argues that the plain language of the settlement agreement ▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇ and that evidence submitted in support of her Opposition shows that she never signed the settlement agreement. (*Id.*) Plaintiff is wrong. Plaintiff did in fact sign the settlement agreement before a notary public. Moreover, Plaintiff overlooks additional language in the settlement agreement that defeats her first argument and relies solely on unreliable evidence to support her second argument. Thus, the Court should reject these arguments and conclude that the settlement agreement bars Plaintiff's claims.

### a. Plaintiff Overlooks Key Language in the Settlement Agreement (Response to Pl.'s Opp. at 8)

Plaintiff asserts that Defendants "[i]nexplicably . . . copy the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇" (Pl.'s Opp. at 8 (quoting Ex. A to Defs.' Mem. of Law in Support of Mot. to Dismiss at ¶¶ 3, 5).) She argues that because GECU did not ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

---

[2] The page numbers of Plaintiff's Opposition that Defendants cite to are the page numbers as displayed in the document, not the CM/ECF page numbers.



▮. (*Id.*) Plaintiff misreads the settlement agreement and is wrong.

Plaintiff fails to recognize that ▮" (Ex. A to Defs.' Mot. to Dismiss at ¶ 3 (emphasis added).) ▮. (*See id.* at ¶¶ 1–2; *see also* Mem. of Law in Support of Defs.' Mot. to Dismiss at 8–9 (discussing matters that settlement agreement will resolve).) ▮.

   b. **Plaintiff's Evidence Does Not Support Her Argument (Response to Pl.'s Opp. at 8–11)**

Plaintiff submits several self-serving, unauthenticated, irrelevant and/or unreliable exhibits with her Opposition that she claims show that she did not sign the settlement agreement. The exhibits are Plaintiff's own self-serving affidavit (Ex. 1 to Pl.'s Opp.), the affidavit of Plaintiff's close friend, Jeanette Poulin (Ex. 2 to Pl.'s Opp.), and the affidavit of Plaintiff's counsel in the Maserati Action, William Whewell (Ex. 3 to Pl.'s Opp.). Each of these affidavits include additional exhibits. However, the affidavits and the exhibits appended thereto contain several unreliable, hearsay statements that should not factor into the Court's decision on this Motion.

When ruling on a motion under Fed. R. Civ. P. 12(b)(1), the court "may consider affidavits

3

and other materials beyond the pleadings to resolve the jurisdictional issue, *but [the court] may not rely on conclusory or hearsay statements contained in the affidavits.*" *Emanuel v. Griffin*, No. 13-Civ-1806 (JMF), 2013 WL 5477505, at *3 (S.D.N.Y. Oct. 2, 2013) (quoting *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir.2004)) (emphasis added).

Here, Plaintiff's "evidence" is rife with hearsay statements and conclusory assertions. For example, Plaintiff's affidavit contains several paragraphs dedicated to explaining what GECU employee Jamie Rivera purportedly said to Plaintiff. (*See* Ex. 1 to Pl.'s Opp. at ¶¶ 15–28.) What Ms. Rivera told, said, indicated, warned, etc. constitutes the precise definition of hearsay. *See* FED. R. EVID. 801(c). She allegedly made each of the statements to Plaintiff out of court, and Plaintiff needs to offer the statements for their truth to support her argument. These statements cannot support Plaintiff's argument that she did not sign the settlement agreement, and the Court should ignore them.[3] More significantly, however, is that Ms. Rivera refutes these statements. *See* Ex. A (Rivera Decl.). The remainder of Plaintiff's affidavit are self-serving, conclusory statements that the Court should not consider in ruling on this Motion.

Moreover, the two anonymous, unauthenticated letters that Plaintiff attached to William Whewell's affidavit contain numerous hearsay statements and, more importantly, are bereft of any indicator about who made the statements therein. Mr. Whewell admits that he does not know who sent or authored the letter (Ex. 3 to Pl.'s Opp. at ¶¶ 4, 6), and Plaintiff does not identify an author of the letters in her Opposition (*see* Pl.'s Opp. at 10–11). It is hard to fathom how they are relevant and why they would even be included in any filing with any Court.

---

[3] Defendants acknowledge the numerous statements that Plaintiff attributes to Ms. Rivera throughout her Affidavit. (*See* Ex. 1 to Pl.'s Opp. at ¶¶ 15–28.) These alleged statements are a red herring and have no bearing on the Court's determination of whether it has subject matter jurisdiction or whether Plaintiff signed the Settlement Agreement. Importantly, however, Rivera has reviewed the statements that Plaintiff attributes to her and vehemently denies making them. (*See* Decl. of J. Rivera (Ex. A) at ¶ 3.)

4

Anonymous letters are inherently unreliable and, thus, of "absolutely no value" to the Court in resolving this Motion. *See Fritz v. Boland & Cornelius*, 287 F.2d 84, 85 (2d Cir. 1961). In addition, like Plaintiff's affidavit, Mr. Whewell's affidavit is self-serving and should not be considered by the Court. Plaintiff seeks a determination from this Court that she did not execute the settlement agreement ███████████████████████. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████. The self-serving nature of the affidavit, coupled with the worthless anonymous letters, should result in the Court declining to consider Mr. Whewell's affidavit.

The Court should likewise decline to consider the affidavit of Jeanette Poulin, which is again self-serving and contains numerous statements allegedly made by individuals other than the affiant. For instance, Ms. Poulin asserts that she "heard" a telephone call between Plaintiff and Ms. Vrabel (Ex. 2 to Pl.'s Opp. at ¶ 13). She recites several statements that Ms. Vrabel allegedly made; however, she has no way of proving that Ms. Vrabel actually made such statements. Moreover, it is not clear how the alleged statements of Ms. Vrabel support Plaintiff's argument that she did not sign a settlement agreement. She also admits that she is a close friend of Plaintiff; therefore, her goal is to ensure a favorable outcome for her close friend. The Court should reject this affidavit.

The exhibits that Plaintiff submits in support of her Opposition are wholly unreliable, self-serving, and insufficient. Plaintiff cites authority stating that when courts consider evidence outside the complaint, "a plaintiff will have an opportunity to contest defendant's relied-upon evidence by submitting material that controverts it." (Pl.'s Opp. at 9 (quoting *Glob. Network Comms. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006).) Plaintiff's problem is that,

although she submitted "material," the unreliability of such material renders it unable to controvert the fully executed, notarized settlement agreement that Defendants' submitted in support of their Motion to Dismiss.  Importantly, Plaintiff's signature on the agreement constitutes presumptive if not conclusive evidence that an agreement was formed.  *See Morales v. Rent-A-Center, Inc.*, 306 F. Supp. 2d 175, 181 (D. Conn. 2003) (noting that plaintiff's signature on arbitration agreement "serves as presumptive evidence that an agreement was formed.").  The fact that the settlement agreement is notarized is further presumptive evidence that the agreement was formed.  Therefore, the fully executed and notarized settlement agreement carries a strong presumption that Plaintiff and Defendants entered into the settlement agreement.  The unreliable hearsay and self-serving statements that Plaintiff submitted in support of her Opposition fail to overcome this strong presumption.  The fully executed and notarized settlement agreement is the only reliable evidence before the Court and, as such, the Court should conclude that Plaintiff ███████████ ████████ depriving the Court of jurisdiction.

## II. **PLAINTIFF FAILED TO STATE PLAUSIBLE CLAIMS FOR RELIEF**

Plaintiff cannot defeat the strong evidence establishing that she released her claims when she signed the settlement agreement (before a notary) in the Maserati Action and, therefore, cannot prove that this Court has jurisdiction.  The Court should dismiss this action on that basis alone.  However, assuming *arguendo* that the Court does have jurisdiction (which is denied), Plaintiff has failed to show that she has stated plausible claims for relief for her FCRA, CUTPA, injurious falsehood, and intentional infliction of emotional distress claims.  Thus, the Court should dismiss these counts from the Complaint.

### a. **Plaintiff's FCRA Claim Preempts Her State Law Claims (Response to Pl.'s Opp. at 13–15)**

Plaintiff has failed to refute Defendants' argument that the FCRA preempts Plaintiff's state

law claims. She argues that the conduct she alleged does not fall under the purview of the FCRA and, therefore, that her claims are not preempted. (*See* Pl.'s Opp. at 14–15.) Plaintiff's argument is unconvincing.

The allegations supporting Plaintiff's state law claims are related to GECU's responsibilities as a furnisher of information to credit reporting agencies. Plaintiff alleges that Defendants wrongfully repossessed a vehicle and made false reports to authorities, closed Plaintiff's accounts, and prevented her from timely paying her loans. (*See* Compl. at ¶ 142.) All of these alleged actions purportedly affected the information furnished to credit reporting agencies and, therefore, are related to GECU's responsibilities as a furnisher of information. The state law claims are thus preempted. *See Sprague v. Salisbury Bank & Tr. Co.*, No. 3:18-CV-001487 (VLB), 2019 WL 4246601, at *10 (D. Conn. Sept. 5, 2019), *aff'd*, 969 F.3d 95 (2d Cir. 2020) However, if the Court concludes that only certain conduct overlaps with the FCRA, it should dismiss Plaintiff's state law claims to the extent of the overlap.[4]

### b. Plaintiff has Failed to State a CUTPA Claim (Response to Pl.'s Opp. at 16–18)

Plaintiff attempts to argue that she properly pleaded a claim under CUTPA because her claim "falls squarely within the conduct integral to Defendants' business—unethical and unscrupulous collection practices among other things." (Pl.'s Opp. at 17.) However, absent from Plaintiff's Complaint is any allegation that GECU is engaged in any "trade" or "commerce" or that Plaintiff is a consumer of credit reporting. Without these allegations, Plaintiff has failed to state a plausible claim for relief under CUTPA and, therefore, the Court should dismiss this claim.

---

[4] Plaintiff appears to acknowledge at least a partial overlap between the state law claims and the FCRA. (*See* Pl.'s Opp. at 14.)

### c. Plaintiff's Injurious Falsehood Claim is Insufficient (Response to Pl.'s Opp. at 18–19)

Plaintiff maintains that Connecticut courts recognize claims of injurious falsehood, which are also known as "commercial disparagement" or "trade libel." (Pl.'s Opp. at 18.) Even accepting Plaintiff's argument, the claim would still not apply and should be dismissed.

Even if the Court concludes that Connecticut courts recognize the claim of injurious falsehood, it should dismiss Plaintiff's claim because it is inapplicable to this case. "Defamation or disparagement of *a business'* and goods and services may be considered trade libel[.]" *QSP, Inc. v. Aetna Cas. & Sur. Co.*, 256 Conn. 343, 358 (2001) (citing *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 265 (2d Cir. 1995)) (emphasis added). Here, Plaintiff does not allege that GECU or Ms. Vrabel disparaged Plaintiff's business or the goods and/or services that Plaintiff provides. Indeed, if she did make such allegations, they would be wholly improper as none of Plaintiff's business entities are a party to this action. Additionally, to reiterate, there exists authority, which Defendants cited in their opening memorandum of law, that injurious falsehood is not recognized in Connecticut courts. (*See* Defs.' Mem. of Law in Support of Mot. to Dismiss at 17.) Accordingly, the Court should dismiss Plaintiff's injurious falsehood claim.

### d. Plaintiff Does Not State a Plausible Claim for Intentional Infliction of Emotional Distress (Response to Pl.'s Opp. at 19–21)

Plaintiff maintains that Defendants' conduct was sufficiently extreme and outrageous to state a claim for intentional infliction of emotional distress. (Pl.'s Opp. at 19.) Plaintiff's arguments are inadequate to establish that she sufficiently stated a claim.

The Court should reject Plaintiff's argument that the filing of a false police report may constitute intentional infliction of emotional distress. (*See id.* at 21.) Plaintiff alleged in a conclusory fashion that Defendants filed false police reports with state and federal authorities, and

8

that such allegedly false reports caused emotional distress.  (*See* Compl. at ¶ 159.)  In Connecticut cases that have found the allegation of filing a false complaint with the police sufficiently extreme and outrageous, the plaintiffs have alleged that they were arrested and/or required to appear in court based on the false claim.  *See Bremmer-McLain v. City of New London*, No. KNL-CV11-5014142-S, 2012 WL 2477921, at *10 (Conn. Super. Ct. June 1, 2012).  Plaintiff does not make those allegations here and, indeed, cannot do so.  She, instead, alleges no details other than that the reports were filed.  The conclusory allegations related to the police reports are insufficient to support a claim of intentional infliction of emotional distress.

The remaining conduct that Plaintiff alleges supports her claim for intentional infliction of emotional distress can, at best, be described as insults, verbal taunts, threats, annoyances, or conduct that displays bad manners or results in hurt feelings.  Such conduct does not reach the very high bar of extreme and outrageous.  *See Karlen v. Westport Bd. of Educ.*, No. 3:07-CV-309 (CFD), 2011 WL 383708, at *4 (D. Conn. Aug. 30, 2011) (citing *Buster v. City of Wallingford*, 557 F. Supp. 2d 294, 301 (D. Conn. 2008)).  Connecticut court have declined to characterize conduct far worse than what Plaintiff has alleged as extreme and outrageous.  *See, e.g.*, *Morrissey v. Yale University*, 268 Conn. 426, 427–28 (2004) (affirming trial court's conclusion that defendant's alleged insults towards, and threats of physical violence to, the plaintiff were insufficient to establish extreme and outrageous conduct); *Cassotto v. Aeschliman*, 130 Conn. App. 230, 235 (2011) (concluding defendant's false accusation of criminal conduct was insufficient to establish the extreme and outrageous requirement, even where the plaintiff alleged that she sought medical treatment and counseling); *Appleton v. Bd. of Ed.*, 254 Conn. 205, 211 (2000) (no extreme and outrageous conduct despite allegations that plaintiff was escorted off defendant's property by the police, forced to resign, and sought psychiatric treatment).  Therefore, Plaintiff's baseless claim

9

for intentional infliction of emotional distress should not survive.

### III. CONCLUSION

Plaintiff's Opposition fails to refute the strong arguments in favor of dismissal that Defendants presented in their opening memorandum. Unreliable, unidentified, unauthenticated, self-serving, and conclusory affidavits and exhibits add pages to the Opposition, but do nothing to support the arguments therein. The fully executed and notarized settlement agreement is valid, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and deprives this Court of jurisdiction. At the very least, the Court should stay this case ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Moreover, Plaintiff has failed to establish the adequacy of several of her claims. Accordingly, the Court should grant Defendants' Motion to Dismiss.

Respectfully Submitted,

THE DEFENDANTS,
GE CREDIT UNION A/K/A GENERAL
ELECTRIC EMPLOYEES FEDERAL CREDIT
UNION and ELSIE VRABEL

By  */s/ Thomas C. Blatchley*
   Thomas C. Blatchley
   Aubrey E. Blatchley
   Justyn P. Stokely
   Gordon & Rees Scully Mansukhani, LLP
   95 Glastonbury Boulevard, Suite 206
   Glastonbury, CT 06033
   Phone: 860-494-7525
   Fax: 860-560-0185
   Email: tblatchley@grsm.com
   Email: ablatchley@grsm.com
   Email: jstokely@grsm.com

**CERTIFICATION**

      I hereby certify that on this 7th day of January, 2021, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filings. Parties may access this filing through the Court's CM/ECF System.

                                    */s/ Thomas C. Blatchley*
                                    Thomas C. Blatchley