UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

YOLANDA WEALTHBERG,
    *Plaintiff*,

v.

GE CREDIT UNION and
ELSIE VRABEL
    *Defendant*.

No. 3:20-cv-01314 (VAB)

**RULING AND ORDER ON MOTION TO DISMISS**

Yolanda Wealthberg has sued GE Credit Union ("GE") and Elsie Vrabel (together, the "Defendants") for violations of the Fair Credit Reporting Act ("FCRA"), the Connecticut Unfair Trade Practices Act ("CUTPA"), and the Connecticut Creditor's Collection Practices Act ("CCPA"), as well as for defamation, injurious falsehood, and intentional infliction of emotional distress under state common law. *See* Compl., ECF No. 1 (Sept. 3, 2020) ("Compl."). Ms. Wealthberg alleges that GE and its Collections Manager, Ms. Vrabel, engaged in intentional false credit reporting, unwarranted repossession of vehicles, baseless criminal prosecution, and harassing conduct in order to improperly coerce Ms. Wealthberg to settle a dispute regarding alleged debts. *Id.*

Defendants have moved to dismiss the Complaint in its entirety for failure to state a claim upon which relief can be granted, as well as on the grounds that a Settlement Agreement resolves the disputes at issue. *See* Mot. to Dismiss, ECF No. 20 (Nov. 19, 2020); Mem. in Support of Mot. to Dismiss, ECF No. 20-1 (Nov. 19, 2020) ("Mot. to Dismiss").

For the following reasons, the motion to dismiss is **DENIED** without prejudice to renewal following discovery limited to the issue of whether Ms. Wealthberg signed or otherwise assented to the Settlement Agreement, which shall be completed by **December 3, 2021**.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

   A. **Factual Background**

      1. **Complaint**

This case centers around a loan allegedly provided by GE to Wealthberg's company, the National Healthcare Workers Association, LLC ("NHWA"), in order to purchase a 2018 Maserati Grand Turismo (the "Maserati"). Compl. at 4 ¶ 15. The Maserati allegedly was purchased on May 29, 2019. *Id.* Allegedly, the loan agreement provided that NHWA would "repay the loan over 72 months at the annual interest rate of 5.750%." *Id.* at 4 ¶ 16. The loan agreement allegedly further required NHWA to "provide GE with the title of the Maserati, which would serve as collateral security for the loan." *Id.* Allegedly, GE claimed that NHWA never submitted the requisite title, *id.* at 4 ¶ 17, and, on March 19, 2020, GE allegedly initiated a lawsuit in Connecticut Superior Court alleging breach of contract, misrepresentation and conversion,[1] *see id.* Allegedly, Ms. Wealthberg attempted to pay the loan in full, but GE refused the offer. *Id.*

Thereafter, Ms. Wealthberg alleges that GE and Ms. Vrabel engaged in a series of acts to "unduly influence" her to settle the matter related to the Maserati loan. *Id.* at 6 ¶ 32. Ms. Wealthberg alleges, for example, that Defendants pursued criminal charges, *see id.* at 6–8 ¶¶ 32–50, improperly repossessed a vehicle owned by a company affiliated with Ms. Wealthberg, *see id.* at 8–10 ¶¶ 51–65, improperly recoded accounts as delinquent, including for properties in West Haven and Milford, CT, *see id.* at 10–13 ¶¶ 66–86, submitted inaccurate information to

---

[1] The Court takes judicial notice of the state court proceeding in *GE Credit Union a/k/a General Elec. Employees Federal Credit Union v. We[a]lthberg, et al.*, Docket No. AANCV-20-6038011-S, J.D. Ansonia/Milford. *See Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (The Court may "take judicial notice of relevant matters of public record."); *see also Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (Complaints filed by *pro se* plaintiffs "must be construed liberally and interpreted to raise the strongest arguments that they suggest." (internal citation omitted)).

credit agencies about Ms. Wealthberg's debts, *see id.*, and engaged in other forms of threats and harassment, *see id.* at 13–15 ¶¶ 87–100.

Ms. Wealthberg alleges that she never signed the settlement agreement that Defendants allegedly pressured her to sign. *Id.* at 14 ¶ 97.

### 2. Settlement Agreement

The settlement agreement in dispute between the parties (the "Settlement Agreement" or the "Agreement"[2]) seeks to resolve several disputes described in the Complaint, including: (1) the suit GE brought against Wealthberg and NHWA in state court for failure to pay the Maserati Loan (the "Maserati Action"), *see* Ex. A to Mot. to Dismiss, ECF No. 20-2 (Nov. 19, 2020) ("Settlement Agreement") at 1; *see also* Compl. 4–6 ¶¶ 15–31; (2) the dispute between the parties regarding payment for mortgages on properties associated with Ms. Wealthberg in West Haven and Milford, CT (the "West Haven Transfer" and the "Milford Transfer"[3]), *see* Settlement Agreement at 1; *see also* Compl. 11 ¶¶ 75–76; and (3) the claims by Ms. Wealthberg that GE

---

[2] Ms. Wealthberg's Complaint does not contain or attach the Settlement Agreement that GE allegedly wrongfully coerced her to sign. The Settlement Agreement, however, is referenced explicitly in Ms. Wealthberg's claims of undue influence. *See generally* Compl. The dispute over the Settlement Agreement, and the multiple references to it in the Complaint, render it appropriate for the Court to review in the context of this motion to dismiss. *See Deutsch v. Pressler, Felt & Warshaw, LLP*, No. 21-CV-84 (JSR), 2021 WL 1619505, at *4 (S.D.N.Y. Apr. 26, 2021) (concluding that "the Court [can] consider [a] [s]ettlement [a]greement on a motion to dismiss" when "it was not referenced in the Complaint" (internal citation omitted)); *2 Broadway L.L.C. v. Credit Suisse First Bos. Mortg. Cap. L.L.C.*, No. 00-CV-5773 (GEL), 2001 WL 410074, at *5 (S.D.N.Y. Apr. 23, 2001) ("Though plaintiffs do not attach the release agreements to their Complaint, the Complaint explicitly references them . . . and therefore the agreements may be considered on this motion."); *Johns v. Town of East Hampton*, 942 F. Supp. 99, 104 (E.D.N.Y. 1996) ("It is well established that when a plaintiff fails to introduce a pertinent document as part of his pleading, a defendant may introduce that exhibit as part of his motion attacking the pleading." (internal alteration and quotation omitted)); *see also Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment." (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir. 1991) (quotation marks omitted) (alteration in original)).

[3] While Ms. Wealthberg has alleged that GE improperly recorded her properties in Milford and West Haven as delinquent, when payment had not been missed, *see* Compl. 11 ¶¶ 75–76, GE has alleged that Ms. Wealthberg transferred these properties out of her name, in violation of her mortgages on those properties, without consent, *see* Settlement Agreement at 1.

incorrectly reported the status of her loans and accounts to various credit bureaus (the "Credit Bureau Claims"), *see* Settlement Agreement at 1; *see also* Compl. 10–13 ¶¶ 66–86.

To this end, the Settlement Agreement imposes obligations on both parties. Most significantly, the Agreement requires Ms. Wealthberg to pay GE for various alleged debts in installments. *See* Settlement Agreement at 2 ¶¶ 1–2. Following satisfaction of those financial obligations, GE is obligated to "withdraw the Maserati Action" in state court and "take no further steps to collect on the same." *Id.* at 2 ¶ 3.

In addition, the Agreement provides a release as to Ms. Wealthberg's claims against GE. Settlement Agreement 3–4 ¶ 5. The release states:

> Upon execution of this Agreement and satisfaction of the obligations set forth herein by GE, Wealthberg and NHWA remise, release and forever discharges, and by these presents do hereby remise, release and forever discharge GE, together with its respective past and present members, co-partners, employees, agents, attorneys, subsidiaries, affiliates, heirs, executors, administrators, personal or legal representatives, successors and assigns ("Releases") of and from all debts, obligations, reckonings, promises, covenants, agreements, contracts, endorsements, bonds, specialties, controversies, suits, actions, causes of actions, trespasses, variances, judgments, extents, executions, damages, claims or demands, in law or in equity, which against each Wealthberg or NHWA, and each of their respective past and present members, co-partners, employees, agents, attorneys, subsidiaries, affiliates, heirs, executors, administrators, personal or legal representatives, successors and assigns ("Releasors") ever had, now has or hereafter can, shall, or may have, for, upon or by reason of any matter, cause or thing whatsoever, from the beginning of the world to the date of these presents in any way related to the Maserati Action, the Milford Transfer, the West Haven Transfer, and the Credit Bureau Claims, whether known or unknown, anticipated or unanticipated, liquidated or unliquidated, including any and all claimed or unclaimed compensatory damages, consequential damages, interest, costs, expenses and fees (including reasonable or actual attorneys' fees) which were or could have been raised in, arise out of, relate to, or in any way, directly or indirectly, involve the Maserati Action, the Milford Transfer, the West Haven Transfer, and the Credit Bureau Claims. Releasers also specifically waive

> and release any claims they may have, whether known or unknown, fixed or contingent, under the Fair Debt Collection Practices Act ("FDCPA"), the Equal Credit Opportunity Act ("ECOA"), the Fair Credit Reporting Act ("FCRA"), or their implementing regulations, or any corresponding state law statute or provision, concerning the Maserati Action, the Milford Transfer, the West Haven Transfer, the Credit Bureau Claims. It is the intention and effect of this release to discharge all claims that Releasers have against the Releasees up until and including the date of the execution of this Agreement. Excepted from the provisions of this Paragraph are those obligations of GE set forth in this Agreement.

*Id.* The Agreement contains a similar provision that conditions a release of GE's claims against Ms. Wealthberg "upon . . . satisfaction of the obligations set forth herein by Wealthberg and NHWA[.]" *Id.* at 2–3 ¶ 4. No other provision of the Agreement, however, clarifies when the release will take effect, or when the condition of "satisfaction of the obligations set forth herein", as stated in these provisions, shall be satisfied.

The Settlement Agreement contains signatures by both parties in this matter, including Ms. Wealthberg and GE. *Id.* at 5, 7–8.

### B. Procedural Background

On September 3, 2020, Ms. Wealthberg filed a Complaint against GE Credit Union and Elsie Vrabel. *See* Compl.

On September 25, October 29, and November 10, 2020, the Court granted motions for extension of time to Defendants to respond to Ms. Wealthberg's Complaint. *See* Order Granting Motion for Extension of Time, ECF No. 11 (Sept. 25, 2020); Order Granting Motion for Extension of Time, ECF No. 13 (Oct. 29, 2020), and Order Granting Motion for Extension of Time, ECF No. 15 (Nov. 10, 2020).

On November 19, 2020, Defendants filed a redacted motion to dismiss, *see* Redacted Mot. to Dismiss, ECF No. 18 (Nov. 19, 2020), and a motion to dismiss under seal without redaction, *see* Mot. to Dismiss.

On December 10, 2020, Ms. Wealthberg filed a redacted memorandum in opposition, *see* Redacted Mem. in Opp'n, ECF No. 23 (Dec. 10, 2020), and a memorandum in opposition under seal, *see* Mem. Of Law in Opp'n to Defs.' Mot. to Dismiss, ECF No. 24 (Dec. 10, 2020) ("Opp'n").

On January 7, 2021, Defendants filed a redacted reply in support of their motion to dismiss, *see* Redacted Reply to Pl.'s Opp'n to Mot. to Dismiss, ECF No. 28 (Jan. 7, 2021), in addition to a reply under seal, *see* Defs. Reply to Pl.'s Opp'n to Mot. to Dismiss, ECF No. 29 (Jan. 7, 2021) ("Reply").

On February 10, 2021, the Court stayed the case pending resolution of the motion to dismiss, *see* Order Staying Case, ECF No. 34 (Feb. 10, 2021), following a motion by the parties, *see* Mot. to Stay Discovery, ECF No. 33 (Feb. 8, 2021).

**II.      STANDARD OF REVIEW**

**A.  Rule 12(b)(1)**

"A case is properly dismissed for lack of subject matter jurisdiction under [Federal] Rule [of Civil Procedure] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)). The plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject matter jurisdiction over the claims. *See id.*

"When considering a motion to dismiss [under] Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff."

*Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000); *see also Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) (quoting *Sweet*, 235 F.3d at 83). The court, however, may also resolve disputed jurisdictional issues "by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing." *Karlen ex rel. J.K. v. Westport Bd. of Educ.*, 638 F. Supp. 2d 293, 298 (D. Conn. 2009) (citing *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000)).

"When the Rule 12(b)(1) motion is facial, *i.e.,* based solely on the allegations of the complaint . . ., the plaintiff has no evidentiary burden." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). "A defendant is [also] permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the [p]leading." *Id.* "In opposition to such a motion, the plaintiffs will need to come forward with evidence of their own to controvert that presented by the defendant 'if the affidavits submitted on a 12(b)(1) motion . . . reveal the existence of factual problems' in the assertion of jurisdiction." *Id.* (quoting *Exch. Nat'l Bank of Chi. v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976)).

### A. Rule 12(b)(6)

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

7

detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court also may consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

## III. DISCUSSION

### A. Settlement Agreement

"It is well established that settlement agreements are contracts and must therefore be construed according to general principles of contract law." *Tromp v. City of New York,* 465 F. App'x 50, 51 (2d Cir. 2012) (quoting *Collins v. Harrison-Bode*, 303 F.3d 429, 433 (2d Cir. 2002)). "Similarly, a release of liability 'is a species of contract' and is also governed by contract law." *Gulley v. Mulligan*, No. 3:18-CV-858 (SRU), 2019 WL 2062431, at *3 (D. Conn. May 9, 2019) (citing, *inter alia*, *Golden Pac. Bancorp v. F.D.I.C.*, 273 F.3d 509, 514 (2d Cir. 2001)). "In deciding the enforceability of a settlement agreement," including any release provisions, "district courts look to state contract law." *Id.*; *see also Crocker v. Chapdelaine*, No. 3:18-CV-613 (KAD), 2019 WL 2269944, at *2 (D. Conn. May 28, 2019) ("[T]he interpretation of a contract is ordinarily a matter of state law to which [the federal court] defer[s]." (quoting *DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 468 (2015)).

Under Connecticut law, a contract is binding where the parties have mutually assented to its terms and the terms of the contract are "clear and unambiguous." *Brandt v. MIT Development Corp.*, 552 F. Supp. 2d 304, 319 (D. Conn. 2008) (quoting *Audobon Parking Assoc. Ltd. P'ship v. Barclay & Stubbs, Inc.*, 225 Conn. 804, 811 (1993)); *Gulley*, 2019 WL 2062431, at *3 (citing the same). "[A] contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself[.]" *Harbour Pointe, LLC v. Harbour Landing Condominium Ass'n, Inc.*, 300 Conn. 254, 260–61 (Conn. 2011); *see also Datto Inc. v. Braband*, 856 F. Supp. 2d 354, 365 (D. Conn. 2012) (citing the same). In determining whether a contract is ambiguous, the Court should "not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity." *Alstom Power, Inc. v. Balcke-Durr, Inc.*, 269 Conn. 599, 610–11 (Conn. 2004)

(internal citation omitted). Rather, "any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms." *Id.* at 611 (internal citation omitted).

Ms. Wealthberg argues that the Settlement Agreement is unenforceable because she did not sign it. *See* Compl. at 14 ¶ 97; Opp'n at 8–11. She further argues that, even if the Settlement Agreement were enforceable, it would not bar her claims because the release in the Agreement is conditioned upon an event that has not yet occurred: the "satisfaction of the obligations set forth herein by GE[.]" Settlement Agreement at 3–4 ¶ 5. Ms. Wealthberg contends that GE has failed to fulfill such obligations because it allegedly has not withdrawn the Maserati Action in state court. *See* Opp'n at 8.

Defendants disagree with Ms. Wealthberg's interpretation of the Settlement Agreement's release provision and contest her allegations of forgery. Mot to Dismiss at 7–11; Reply at 2–6. They argue that the agreement is enforceable, and that the release is effective immediately upon execution, without condition.[4] *Id.*

The Court disagrees.

As a preliminary matter, Ms. Wealthberg has raised factual questions as to whether there is an operative and enforceable agreement in this case, as she alleges that she never signed the

---

[4] Defendants further argue that, even if the Court accepts Plaintiff's interpretation of the Settlement Agreement, GE has not failed to fulfill its obligations under the Agreement because, according to the Agreement's terms, GE is only required to dismiss the state court proceeding following full payment by Ms. Wealthberg and NHWA. Reply at 2–3. They do not, however, argue that Ms. Wealthberg has prevented or hindered the completion of this condition precedent to their performance, or otherwise acted so as to excuse their performance. *See Blumberg Assocs. Worldwide, Inc. v. Brown & Brown of Connecticut*, 311 Conn. 123, 176 (2014) ("[U]nder the prevention doctrine, if a party to a contract prevents, hinders, or renders impossible the occurrence of a condition precedent to his or her promise to perform, or to the performance of a return promise, [that party] is not relieved of the obligation to perform, and may not legally terminate the contract for nonperformance." (internal quotation omitted) (alteration in original)).

Agreement. *See* Compl. at 14 ¶ 97.[5] Although a signature on an agreement "serves as presumptive evidence that an agreement was formed," *Morales v. Rent-A-Ctr., Inc.*, 306 F. Supp. 2d 175, 181 (D. Conn. 2003), the signature on the Agreement provided is not conclusive at this stage of the litigation. *See York*, 286 F.3d at 125 ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.");[6] *see also Conley v. 1008 Bank St., LLC*, No. 3:20-CV-284 (CSH), 2020 WL 4926599, at *7 (D. Conn. Aug. 22, 2020) ("[A] person cannot be liable on an instrument where his signature is forged or unauthorized." (quoting *Hanover Ins. Co. v. Designs on Travel, Inc.*, No. CV 87-38710, 1991 WL 258103, at *2 (Conn. Super. Ct. Nov. 20, 1991)). Proper discovery should be conducted on the issue of whether Ms. Wealthberg signed or authorized signature on the Agreement, or otherwise properly assented to its terms.

As a result, the resolution of other issues, such as whether the Agreement is enforceable if the conditions precedent to release have not been satisfied, will be addressed after this discovery. A "condition precedent" is a fact or event "which the parties intend must exist or take place before there is a right to performance." *EH Inv. Co., LLC v. Chappo, LLC*, 174 Conn. App.

---

[5] Ms. Wealthberg supports this allegation in the pleadings with an affidavit attached to her brief in opposition to the motion to dismiss. *See* Wealthberg Decl., Ex. 1 to Opp'n to Defs.' Mot. to Dismiss at 2 ¶¶ 5–6, ECF No. 24-1 (Dec. 10, 2020) ("Wealthberg Decl."). If the Settlement Agreement raises an issue as to the Court's jurisdiction, the Court is permitted to consider the affidavit. *See Karlen ex rel. J.K.*, 638 F. Supp. 2d at 298 (The court may resolve disputed jurisdictional issues "by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing." (citing *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000)). The Court, however, does not reach the question of whether the Settlement Agreement poses a jurisdictional bar, as opposed to an affirmative defense, where it is unclear whether the Agreement is enforceable, even upon consideration of the additional information provided outside the pleadings by the parties. *See, e.g.*, Wealthberg Decl., Ex. 1 to Opp'n to Defs.' Mot. to Dismiss, ECF No. 24-1 (Dec. 10, 2020); Poulin Decl., Ex. 2 to Opp'n to Defs.' Mot. to Dismiss, ECF No. 24-2 (Dec. 10, 2020); Whewell Decl., Ex. 3 to Opp'n to Defs.' Mot. to Dismiss, ECF No. 24-3 (Dec. 10, 2020); Rivera Decl., Ex. 1 to Reply to Pl.'s Opp'n to Mot. to Dismiss, ECF No. 28-1 (Jan. 7, 2021). Notably, there is no evidence to support that Ms. Wealthberg signed the agreement, directed another individual to sign it, or otherwise assented to the Agreement's terms.

[6] Even if the Settlement Agreement is jurisdictional, as Defendants argue, "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff" when considering a motion to dismiss [under] Rule 12(b)(1). *Sweet*, 235 F.3d at 83.

344, 360 (Conn. App. Ct. 2017) (citing *Lach v. Cahill*, 138 Conn. 418, 421 (Conn. 1951)). A condition precedent can be either express or implied. *Id.* at 361. "Although not strictly required, parties often signal their agreement to create an express condition precedent by using words such as 'on [the] condition that,' 'provided that,' unless and until, or 'if.'" *Id.* (internal citation omitted) (alteration in original). "In addition to express conditions precedent, a condition precedent may be implied or supplied by the court, often in circumstances in which the court determines that the contracting parties have failed to foresee or recognize the significance of an event or its potential effect on the parties' rights." *Id.* (internal quotation marks and citation omitted).

An implied condition precedent may exist where the Agreement conditions the release of "all" claims "in any way related to the Maserati Action, the Milford Transfer, the West Haven Transfer, and the Credit Bureau Claims" upon the satisfaction of the parties' obligations in the Agreement. *See* Settlement Agreement 2–4 ¶¶ 4, 5. But the issue of whether the parties intended the contract to be contingent upon satisfaction of these obligations—namely, Ms. Wealthberg's payment, and Defendants' subsequent withdrawal of the state court action— can be addressed after discovery on the threshold issue discussed above. *See EH Inv. Co., LLC*, 174 Conn. App. at 360 ("Whether a provision in a contract is a condition the nonfulfillment of which excuses performance depends upon the intent of the parties, to be ascertained from a fair and reasonable construction of the language used in the light of all the surrounding circumstances when they executed the contract." (citing *Lach*, 138 Conn. at 421) (emphasis added)).[7]

---

[7] The issue of whether the parties have attempted to fulfill those obligations in good faith, as is relevant to whether the prevention doctrine applies, also can be addressed after discovery. *See Blumberg Assocs. Worldwide, Inc.*, 311 Conn. at 176 ("[T]he rule that a party may not prevent or hinder the occurrence of a contract condition is a specific application of the covenant of good faith and fair dealing that is implicit in every contract." (internal quotation marks and citation omitted)).

Significantly, if "[i]t is the intention and effect of this release to discharge all claims that Releasers have against the Releasees up until and including the date of the execution of this Agreement," Settlement Agreement 4 ¶ 5, then this clause may conflict with the prior sentence, which conditions the release of all claims upon the parties' satisfaction of their contractual obligations. *See id.* 3–4 ¶ 5. If so, the meaning of the Agreement's release provision could be ambiguous. *See Rsrv. Realty, LLC v. Windemere Rsrv., LLC*, 205 Conn. App. 299, 322 n.26 (Conn. App. Ct. 2021) (noting that "[a]mbiguity may exist when two contractual provisions are in conflict with each other" (internal quotation omitted) (alteration in original)); *see also EH Inv. Co.*, 174 Conn. App. at 360 ("If a contract is unambiguous within its four corners, intent of the parties is a question of law requiring plenary review . . . . [If] the language of a contract is ambiguous, the determination of the parties' intent is a question of fact." (quoting *Assn. Resources, Inc. v. Wall*, 298 Conn. 145, 183 (Conn. 2010)).

In any event, none of this will be or should be resolved now. *See Stanley Works Israel Ltd. v. 500 Grp., Inc.*, 332 F. Supp. 3d 488, 501 (D. Conn. 2018) *(*"[W]hile a court is not obliged to accept the allegations of the complaint as to how to construe a contract, it should resolve any contractual ambiguities in favor of the plaintiff on a motion to dismiss." (internal quotation marks and citation omitted)).

Accordingly, because the issue of the Court's jurisdiction, an issue related to the applicability of the Settlement Agreement, will benefit from proper discovery on the issue of its validity, at the very least, Defendant's motion to dismiss on these grounds will be denied without prejudice to renewal.

## IV. CONCLUSION

For the reasons explained above, the Court **DENIES** the motion to dismiss without prejudice to renewal following discovery limited to the issue of whether Ms. Wealthberg signed or otherwise assented to the Settlement Agreement, which shall be completed by **December 3, 2021**.

**SO ORDERED** at Bridgeport, Connecticut, this 24th day of September, 2021.

    /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge