UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT (NEW HAVEN)

| | |
|---|---|
| YOLANDA WEALTHBERG,<br>           Plaintiff, | CASE NO. 3:20-cv-01314-OAW |
| vs. | |
| GE CREDIT UNION a/k/a GENERAL<br>ELECTRIC EMPLOYEES FEDERAL<br>CREDIT UNION and ELSIE VRABEL,<br>           Defendants. | |
| GE CREDIT UNION a/k/a GENERAL<br>ELECTRIC EMPLOYEES FEDERAL<br>CREDIT UNION and ELSIE VRABEL,<br>           Third Party Plaintiffs, | |
| vs. | |
| TRANS UNION, LLC,<br>           Third Party Defendant. | |

**THIRD-PARTY DEFENDANT TRANS UNION, LLC'S MEMORANDUM
IN SUPPORT OF ITS MOTION TO DISMISS GE CREDIT UNION'S
AND ELSIE VRABEL'S COMPLAINT**

Third-Party Defendant consumer reporting agency Trans Union, LLC ("Trans Union") hereby submits its Memorandum Of Law In Support of its Motion To Dismiss GE Credit Union And Elsie Vrabel's Complaint (the "Motion").

The Motion should be granted in this unprecedented case where, following a series of unusual events related to Yolanda Wealthberg's alleged failure to repay GE Credit Union for the financing of a Maserati, GE Credit Union's purported tattling on Ms. Wealthberg to the police and the FBI, GE Credit Union's subsequent reporting of all Ms. Wealthberg's unrelated accounts as in default, and GE Credit Union and Ms. Vrabel's alleged attempt to then re-report the accounts as

1

satisfactory, GE Credit Union and Ms. Vrabel seek common law indemnification and contribution from Trans Union, GE Credit Union falsely claims that Trans Union breached the terms of its contract with them, and GE Credit Union's employee, Ms. Vrabel, unfathomably claims Trans Union is liable for negligent infliction of emotional distress because:

  A. Case law holds that GE's breach of contract claim fails because Trans Union's contractual duties to maintain reasonable reporting and reinvestigation procedures are identical to those required by Trans Union under the FCRA and the promise to do something which a party is already legally obligated to cannot provide the basis for a breach of contract claim and, even if it could, GE has not and cannot plausibly allege in the required non-conclusory fashion that it suffered any damages as a result;

  B. Case law holds that the common law indemnification and contribution claims fail because the contract – which GE conveniently failed to file with their Complaint – provides for indemnification <u>by</u> GE <u>to</u> Trans Union (not the other way around) and, even if it did not, the reporting claims arise from or relate to the same conduct which gave rise to Plaintiff Ms. Wealthberg's FCRA claims and case law holds that there is no right to indemnification or contribution under the FCRA;

  C. Case law holds that GE's common law negligence claim fails because an alleged breach of a contractual duty of care cannot "transform a simple breach of contract into a tort claim" and, even if it could, GE has not and cannot plausibly allege in the required non-conclusory fashion that it suffered any damages as a result;

  D. Case law holds that Ms. Vrabel's negligent infliction of emotional distress claim fails because Ms. Vrabel has not and cannot make a showing that Trans Union's reporting of the

accounts, exactly as GE instructed it to, created an unreasonable risk of causing Ms. Vrabel foreseeable emotional distress severe enough that it might result in illness or bodily harm; and

   E. Case law holds GE and Ms. Vrabel's claims should be dismissed with prejudice because amendment would be futile since the facts would not change and there is no way that GE and Ms. Vrabel could manipulate the facts to state any cognizable claims against Trans Union.

**I.** **FACTS**

   This case revolves around a loan funded by Defendant/Third-Party Plaintiff GE Credit Union ("GE") to Plaintiff Yolanda Wealthberg's ("Wealthberg") company, the National Healthcare Workers Association, LLC ("NHWA"), for the purchase of a 2018 Maserati Grand Turismo (the "Maserati"). Pl.'s Compl. ¶ 15. On May 29, 2019, Wealthberg claims that NHWA purchased the Maserati for $99,050 and agreed to "repay the loan over 72 months at the annual interest rate of 5.750%." Id. ¶¶ 15-16. In December of 2019, Wealthberg allegedly sold the Maserati without tendering payment in full to GE. Defs.' Compl. ¶ 11.

   Thereafter, Wealthberg claims that GE and its Collection Manager, Ms. Vrabel, launched a series of acts to "unduly influence Wealthberg to settle the Maserati matter." Pl.'s Compl. ¶ 32. These alleged acts include GE and Vrabel's pursuit of criminal charges, see id. ¶¶ 32-50, the improper repossession of a vehicle owned by a company affiliated with Wealthberg, see id. ¶¶ 51-65, falsely recoding otherwise satisfactory accounts as derogatory, see id. ¶¶ 66-86, furnishing inaccurate information to consumer reporting agencies, see id., and engaging in other forms of threats and harassment, see id. ¶¶ 87-100. In an attempt to correct the purported "erroneous and false information on her credit report that was supplied by GE and Vrabel," Wealthberg submitted disputes to Trans Union, Experian and Equifax. See id. ¶¶ 128-129.

On March 30, 2022, GE and Ms. Vrabel (collectively, "Defendants" or "Third-Party Plaintiffs") filed a Third-Party Complaint against Trans Union, asserting claims for common law indemnification, negligence, breach of contract and negligent infliction of emotional distress. See generally Defs.' Compl. Defendants falsely claim that "Trans Union has an obligation as a matter of law to indemnify the Third-Party Defendants [sic] for all of their damages." See id. ¶ 45. More specifically, Defendants allege that if Wealthberg's Connecticut Unfair Trade Practices Act ("CUTPA") allegations prevail against them, then GE and Ms. Vrabel are entitled to judgment of common law indemnification and contribution against Trans Union for all or part of Wealthberg's recovery. See id. ¶¶ 33-46.

GE further alleges that "[o]n or about October 10, 2006, [GE] and Trans Union entered into a Data Furnishers Reporting Agreement," (the "Agreement"), see id. ¶ 25, that Trans Union was contractually obligated to "accurately process and incorporate into its database any maintenance or consumer dispute verifications" transmitted by GE, see id. ¶ 27, that Trans Union's reporting of Wealthberg's loans as delinquent resulted from a "Trans Union data reporting problem," see id. ¶ 18, "Trans Union failed to take any corrective action in a timely manner and further failed to promptly and accurately remedy its data reporting problem and immediately take corrective action," see id. ¶ 23, 61, that Trans Union breached its contractual obligation by "failing to take any corrective action [with respect to its reporting and reinvestigation of Wealthberg's GE accounts] in a timely manner," see id. ¶ 62, 66 and that GE was damaged by Trans Union's alleged breach. See id. ¶ 63.

Defendants next allege that Trans Union is liable for common law negligence because it is under a legal duty to correct or delete inaccurate information, that Trans Union breached that duty by inaccurately coding and failing to take action to delete or correct inaccurate information, that

4

the alleged decrease in Wealthberg's credit score was foreseeable, and that as a result of Trans Union's alleged negligence, Defendants were forced to expend money to defend against Wealthberg's claims. See id. ¶¶ 50-56.

Finally, Ms. Vrabel unfathomably alleges that Trans Union is liable for negligent infliction of emotional distress because, as a direct and proximate cause of Trans Union's purported negligence, Wealthberg filed suit against Defendants and that "Vrabel sustained and continues to sustain great emotional disturbance, shock to the nervous system, and harm to her personal and business reputations," among other things. Defs.' Compl. ¶¶ 67-68.

## II. STANDARD OF REVIEW

A complaint must "contain a short plain statement of the claims showing that the pleader is entitled to relief," and any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 8(a); Fed R. Civ. P. 12(b)(6).

In reviewing a complaint under Rule 12(b)(6), courts employ a "plausibility standard" guided by "two working principles." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Id.; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)).

Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Iqbal, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to

render a claim plausible." Arista Records LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010) (quoting Turkmen v Ashcroft, 589 F.3d 542, 546 (2d Cir. 2009).

To determine whether a claim has crossed "the line from conceivable to plausible," the court employs a "context-specific inquiry," drawing on the court's "experience and common sense." Iqbal 556 U.S. at 662.  This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 678.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." Id. at 679.

Further, the state substantive law of the state in which the bulk of the events giving rise to the cause of action took place should be applied unless another state has an overriding policy-based interest in the application of its law. See Reichhold Chemicals, Inc. v. Hartford Acc. & Indem. Co., 243 Conn. 401, 703 A.2d 1132 (1997).

**III.   ARGUMENT**

   **A. Case Law Holds That GE's Breach Of Contract Claim Fails Because Trans Union's Contractual Duties To Maintain Reasonable Reporting And Reinvestigation Procedures Are Identical To Those Required By Trans Union Under The FCRA And The Promise To Do Something Which A Party Is Already Legally Obligated To Do Cannot Provide The Basis For A Breach Of Contract Claim And, Even If It Could, GE Has Not And Cannot Plausibly Allege In The Required Non-Conclusory Fashion That It Suffered Any Damages As A Result.**

The elements of a breach of contract claim "are the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages." CTT Communications, Inc. v. Zone Telecom, Inc., 327 Conn. 114, 172 A.3d 1228 (2017) (quoting Meyers v. Livingston, Alder, Pulda, Meiklejohn & Kelly, P.C., 311 Conn. 282, 291, 87 A.3d 534 (2014).

Here, GE fails to state a claim against Trans Union for breach of contract. As an initial matter, GE conveniently fails to the include the controlling Agreement. Instead, they merely assert that two sections of the Agreement control the commitments of Trans Union: to "accurately process and incorporate credit information furnished by [GE]" and to "accurately process and incorporate into its database any maintenance or consumer dispute verification provided to it by [GE]." See Defs.' Compl. ¶¶ 27, 60-61. Additionally, the Agreement identified in GE and Ms. Vrabel's Third-Party Complaint, attached hereto as Exhibit A, contains no express choice of law provision and as such, the substantive law of Connecticut is controlling, as this state has the most significant relationship with the parties and events which took place under the Agreement. See Reichhold Chemicals, Inc. v. Hartford Acc. & Indem. Co., 243 Conn. 401, 703 A.2d 1132 (1997) ("[U]nless another state has an overriding policy-based interest in the application of its law, the law of the state in which the bulk of the contracting transactions took place should be applied.").

A cursory review of Third-Party Plaintiffs' Complaint reveals that Trans Union's alleged duties under the contract are identical to the duties imposed on consumer reporting agencies, like Trans Union, under the FCRA. More specifically, the Agreement requires Trans Union to maintain reasonable reporting and investigation procedures, as is also required by sections 1681e(b) and 1681i of the Fair Credit Reporting Act ("FCRA"). Compare Defs.' Compl ¶¶ 27, 60-61 with 15 U.S.C. § 1681e(b) ("Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.") and § 1681i ("[I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine

whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file…").

Under Connecticut law, a "promise to do something which the promisor is already legally obligated to do does not constitute consideration sufficient to support a valid contract." Jackson v. Water Pollution Control Auth. of City of Bridgeport, 278 Conn. 692, 707 n.13 (2006). Therefore, because GE alleges that the only provisions Trans Union purportedly violated relate to its "promise" to maintain reasonable reporting and reinvestigation procedures, such requirements are unactionable because they are identical to the legal duty imposed by the FCRA and cannot form the required contractual duty for a breach of contract claim against Trans Union.

Even if Trans Union's promise to comply with its requirements under the FCRA could provide the required duty element of a breach of contract claim, GE has not and cannot adequately plead that they suffered any actual or concrete injuries as a result.[1] The extent of GE's breach of contract damage claim is "[GE] has been damaged by Trans Union's breach." Defs. Compl. ¶ 63. As discussed above, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555; see also Iqbal 556 U.S. at 662 (a plausible claim for relief "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). Indeed, based on the allegations in Wealthberg's Complaint, it is abundantly clear that any damages suffered by GE resulted from their own actions, including their decision to report all of

---

[1] For purposes of this Motion, Trans Union recognizes that GE has alleged that Trans Union "failed to take any corrective action in a timely manner and further failed to promptly and accurately remedy its data reporting problem", Defs.' Compl. ¶ 61, based on Ms. Vrabel's allegation that she attempted to re-report Wealthberg's accounts as satisfactory (after Ms. Vrabel reported all of the accounts as in default) based on an alleged "Trans Union data reporting problem." See Defs.' Compl. ¶¶ 18, 22. While these allegations may arguably suffice at the pleadings stage to establish the second and third elements of their breach of contract claims, the allegations are patently false. When Trans Union's counsel advised Third-Party Plaintiffs' counsel of the false nature of the claims, Third-Party Plaintiffs inexplicably refused to withdraw or correct the false statements.

Wealthberg's accounts as delinquent (whether they were or not) when they were not paid in full for the Maserati.  See Pl.'s Compl. ¶¶ 36-39, 48-49, 66-86.

> **B. Case Law Holds That The Common Law Indemnification And Contribution Claims Fail Because The Agreement – Which GE Convieniently Failed To File With Their Complaint – Provides For Indemnification By GE To Trans Union (Not The Other Way Around) and, Even If It Did Not, The Reporting Claims Arise From Or Relate To The Same Conduct Which Gave Rise To Plaintiff Ms. Wealthberg's FCRA Claims And Case Law Holds That There Is No Right To Indemnification Or Contribution Under The FCRA.**

As in initial matter, the Agreement between GE and Trans Union – which GE conveniently failed to attach to their Complaint – requires GE to indemnify Trans Union, not the other way around.  The Agreement states, in relevant part: "[GE] shall be liable for its own acts of negligence, and [GE] shall hold TransUnion harmless and indemnify TransUnion for any loss, cost, expense or liability (including attorneys fees) incurred by TransUnion as a result of [GE's] negligence in the furnishing of data to TransUnion, [GE's] failure to perform any of its obligations described in this Agreement, or [GE's] failure to comply with the FCRA." See Exhibit A ¶ 2(G).  A redacted copy of the Agreement is attached hereto as Exhibit A.[2]

Case law makes clear that where the subject of indemnification is clearly contemplated and expressly addressed by the parties in their contract, there can only be a one-way obligation to indemnification and any reciprocal obligation is extinguished.  See Dow-Westbrook, Inc. v. Candlewood Equine Prac., LLC, 119 Conn. App. 703, 989 A.2d 1075 (2010); Laudano v. General Motors Corp., 34 Conn. Supp. 684, 687, 388 A.2d 842 (1977) ("Indemnity clauses in contracts

---

[2] As the Second Circuit has acknowledged, a court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d. Cir 2007).  Because the Agreement is referenced in the Complaint and provides the foundation for the alleged breach of contract claim, this Court may consider it without converting the Motion into a motion for summary judgment.  Although GE alleges that the controlling contract was formed on or about October 10, 2006, see Defs.' Compl. ¶ 25, this appears to be a mistake, as the Agreement containing the language cited in their Complaint is found within Exhibit A, see Exhibit A ¶ 2(G), which is dated October 1, 2008. Id.

9

entered into by businesses …. should be viewed realistically as methods of allocating the cost of the risk …. of accidents apt to arise from the performance of the contract."). Because the unambiguous language the Agreement requires GE to indemnify Trans Union, GE is precluded from asserting a common law indemnification theory. See General Motors Corp., 34 Conn. Supp. (1977) (holding that "[t]he unambiguous language of an indemnity clause should be given effect as expressing the parties' intention.").

Even if the contract did not require GE to indemnify Trans Union, GE's implied indemnification and contribution claims still fail because Wealthberg's Connecticut Unfair Trade Practices Act claims are preempted by the FCRA and case law makes clear that there is no right to indemnification or contribution under the FCRA.

Section 1681t of the FCRA states, in relevant part: "(b) No requirement or prohibition may be imposed under the laws of any State (1) With respect to any subject matter regulated under… (F) section 1681s-2 of this title, relating the responsibilities of persons who furnish information to consumer reporting agencies…" 15 U.S.C. § 1681t(b)(1)(F). This Court has acknowledged, and the Second Circuit has adopted, a "more literal reading of the phrase '[n]o requirement or prohibition'" to include both state statutory and common law claims. Sprague v. Salisbury Bank & Tr. Co., No 3:18-CV-001487 (VLB), WL 4246601 (D. Conn. Sept. 5, 2019), aff'd, 969 F.3d 95 (2d Cir. 2020). Further, "1681t(b)(1)(F) preempts any recovery for damages based on allegations of or otherwise improper furnishing [of information to consumer reporting agencies] – regardless of the particular statute or common law theory [asserted]." Galper v. JP Morgan Chase Bank, N.A., 802 F3d 437, 447-49 (2d Cir. 2015); see also Doherty v. Wireless Broadcasting Systems of Sacramento, Inc., 151 F.3d 1129, 1131 (9th Cir. 1998) ("A defendant held liable under a federal statute has a right to indemnification or contribution from another only if such a right arises: (1)

through the affirmative creation of a right by Congress, either expressly or implicitly, or (2) under the federal common law.).

This Court, as well as many others, have consistently found that the FCRA does not provide a right to indemnification or contribution. See McMillan v. Equifax Credit Info. Serves., Inc., 153 F. Supp. 2d 129 (D. Conn. 2001); Meyers v. Freedom Credit Union, No. 05-3526, 2007 WL 2753172, at *7 (E.D.Pa. Sept. 21, 2007) (finding no implied right of indemnification under the FCRA); Cintron v. Savit Enterprises, No. CIV.A.07CV04389FLW, 2009 WL 971406 (D.N.J. Apr. 9, 2009) ("Courts should be wary to imply a right of indemnification, guided by the principle that a statute which omits a particular remedy from its extensive enforcement mechanisms is demonstrative of Congress' intent to expressly forbid such remedial action."); see also, e.g., Bowers v. NCAA, 346 F.3d 402, 425 (3d Cir. 2003) (cautioning that courts should not find an implied right to contribution where the federal statute at issue contains a comprehensive remedial scheme); Kay v. First Continental Trading Inc., 966 F. Supp. 753, 754-55 (N.D. Ill. 1997) (the right to contribution for violations of the FCRA is a matter of federal law and no such right exists).

Here, Wealthberg asserts that this Court has subject matter jurisdiction over Wealthberg's claim for violations of the FCRA. Pl.'s Compl. ¶ 13. Wealthberg also claims that supplemental jurisdiction exists under 28 U.S.C. § 1367(a) "to hear and adjudicate state law claims as they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Id. Wealthberg asserts CUTPA claims against GE and Ms. Vrabel for their alleged unfair, deceptive and unethical practices. Pl.'s Compl. ¶¶ 136-143. In turn, GE and Ms. Vrabel claim that Trans Union is liable to them for all or part of Welathberg's CUTPA claims. Defs.' Compl. ¶¶ 33-46.

However, the court need not engage in mental gymnastics in evaluating GE and Ms. Vrabel's indemnification and contribution claims because they are preempted by the FCRA since the claims specifically relate to GE's reporting to Trans Union of adverse information related to Wealthberg's accounts. Pl.'s Compl. at 18-20 ¶¶ 126, 130 and 137.

Defendants have not and cannot allege that Trans Union engaged in any other actions that could even tangentially provide the basis for a CUTPA claim beyond the preempted reporting allegations.  See generally Defs.' Copml.  Indeed, GE and Ms. Vrabel have not and cannot allege that Trans Union should be required to contribute to or indemnify them for the full amount of any judgment Wealthberg may take against GE and Ms. Vrabel with respect to  actions they took outside the scope of their relationship with Trans Union, including GE and Ms. Vrabel's purported "[pursuit of] criminal charges against Wealthberg," see Pl.'s Compl ¶ 32, the "repossession of a certain Nissan Rogue" which belonged to a company affiliated with Wealthberg, see id. ¶ 51, and Ms. Vrabel's purported threating telephone calls to Wealthberg and her daughter wherein Ms. Vrabel called Wealthberg "a piece of shit," "retarded," and stated that "[She] will ruin [Wealthberg's] life." See id. ¶ 91.  This Court is required to use its "experience and common sense" when evaluating complaint allegations, and it simply defies logic to hold Trans Union liable under an indemnification theory for GE and Ms. Vrabel's alleged violations of CUTPA, particularly where Plaintiff's CUPTA claims are preempted by the plain language of the FCRA and this Court has held that FCRA does not provide a right to indemnification or contribution.

> C. **Case Law Holds That GE's Common Law Negligence Claim Fails Because An Alleged Breach Of A Contractual Duty Of Care Cannot "Transform A Simple Breach Of Contract Into A Tort Claim" And, Even If It Could, GE Has Not And Cannot Plausibly Allege In The Required Non-Conclusory Fashion That It Suffered Any Damages As A Result.**

Connecticut Case law makes clear that a negligence claim fails where a legal duty independent of the contract has not been violated.  See Alpha Beta Cap. Partners, L.P. v. Pursuit Inv. Mgmt, LLC, 193 Conn. App. 381, 219 A.3d 801 (2019).  "Put another way, where the damages alleged were clearly within the contemplation of the written agreement … [m]erely charging a breach of a duty of care, employing language familiar to tort law, does not, without more, transform a simple breach of contract into a tort claim…."  Id. at 420 (quoting Dormitory Authority v. Samson Construction Co., 30 N.Y.3d 704, 711, 70 N.Y.S.3d 893, 94 N.E.3d 456 (2018).  Further, "a tort cause of action that is based upon the same facts underlying a contract claim will be dismissed as a mere duplication of the contract cause of action. See id. (quoting Dune Reade v. SL Green Operating Partnership, L.P., 30 App. Div. 3d 189, 190, 817 N.Y.S.2d 230 (2006).

Here, the basis of Defendants' negligence claim is premised on the same contractual duty imposed upon Trans Union under the Agreement.[3]  Under the Agreement, Trans Union agreed to "use commercially reasonable efforts to process and incorporate into its databases the credit information furnished to it by [GE]…" See Defs.' Compl. at 5 ¶ 27.  Trans Union also agreed to "use commercially reasonable efforts to promptly and accurately process and incorporate into its database any maintenance or consumer dispute verifications furnished to it by [GE]…" Id. Like the breach of contract claims, Defendants allege that Trans Union is under a legal duty to correct or delete inaccurate information and breached that duty by failing to take immediate action correct or delete the allegedly inaccurate information.  Id. at 8 ¶¶ 50-51.  However, the "legal" and "contractual" duty imposed upon Trans Union is a distinction without a difference. The Agreement

---

[3] While GE and Ms. Vrabel assert that "Defendants/Third-Party Plaintiffs have suffered damages as a result of Trans Union's breach of its duty," see Defs.' Compl. ¶ 56, they have not and cannot allege that Trans Union owed Ms. Vrabel the same duty under the Agreement, if any at all, because the Agreement is between Trans Union and GE, not Trans Union and Ms. Vrabel. To the extent Trans Union owed a duty of care to Ms. Vrabel, her negligence claim fails for the same reason GE's negligence claim fails.

13

imposes no greater duty on Trans Union than what is required of it under the FCRA. See supra at 7. Because Defendants fail to assert a legal duty that is independent from the duty imposed under the Agreement, this Court should dismiss Third-Party Plaintiff's negligence claims.

Even if Trans Union's promise to comply with its requirements under the FCRA could provide the required duty for a common law negligence claim, GE has not pled and cannot state as required that they suffered any actual or concrete injuries as a result. Similar to the breach of contract claim, the extent of GE and Ms. Vrabel's negligence claim is that they "have been forced to expend sums of money to defend the Suit [brought by Wealthberg]" and have "suffered damages as a result of Trans Union's breach of its duty." Defs. Compl. ¶¶ 55-56. As discussed above, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555; see also Iqbal 556 U.S. at 662 (a plausible claim for relief "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.").

Here, Trans Union cannot plausibly be liable for the fees associated with GE and Ms. Vrabel's defense of Wealthberg's lawsuit. Among other things, GE and Ms. Vrabel have not and cannot allege that Trans Union was involved in any of the actions giving rise to Wealthberg's claims beyond the account reporting allegations, including but not limited to GE and Ms. Vrabel's "[pursuit of] criminal charges against Wealthberg," see Pl.'s Compl ¶ 32, the "repossession of a certain Nissan Rogue" which belong to a company affiliated with Wealthberg, see id. ¶ 51, and Ms. Vrabel's threating telephone calls to Wealthberg and her daughter wherein Ms. Vrabel called Wealthberg "a piece of shit," "retarded," and stated that "[She] will ruin [Wealthberg's] life." See id. ¶ 91. Even as it relates to the reporting allegations, GE and Ms. Vrabel have not and cannot plausibly allege that Wealthberg would not have brought suit against them if it was not for Trans

Union's alleged failure to "correct" the reporting after Ms. Vrabel updated all of Wealthberg's accounts to report as delinquent.

> D. **Case Law Holds That Ms. Vrabel's Negligent Infliction Of Emotional Distress Claim Fails Because Ms. Vrabel Has Not And Cannot Make A Showing That Trans Union's Reporting Of The Accounts, Exactly As GE Instructed It To, Created An Unreasonable Risk Of Causing Ms. Vrabel Foreseeable Emotional Distress Severe Enough That It Might Result In Illness Or Bodily Harm.**

Applicable Case law makes clear that a negligent infliction of emotional distress ("NIED") claim must be dismissed where a plaintiff fails to sufficiently plead that "(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress." Noffsinger v. SSC Niantic Operating Company, LLC, 338 F.Supp. 3d 78, 87 (D. Conn. 2018) (quoting Hall v. Bergman, 296 Conn. 169, 182 n.8, A.2d 666 (2010)). A plaintiff must allege not only that general harm was foreseeable, but specifically that defendant's conduct was likely to cause "emotional distress likely to lead to illness or bodily harm." Olson v. Bristol-Burlington Health District, 87 Conn. App. 1, 5, 863 A.2d 748(2005).

Here, Ms. Vrabel has not alleged, beyond her improper conclusory allegations, that Trans Union's reporting of the accounts exactly as she initially instructed or its alleged failure to "correct" the accounts due to a "data reporting problem" created an unreasonable risk of causing her emotional distress. As an initial matter, when evaluating Ms. Vrabel's claims with "experience and common sense," it is completely implausible that Trans Union's account reporting would cause a credit furnisher's individual employee to suffer any damages at all, let alone "emotional distress likely to lead to illness or bodily harm." To the extent she was distressed at all, case law holds that distress associated with fulfilling one's employment obligations cannot form the basis

15

of an NIED claim.  See Kleftogiannis v. Inline Plastics Corp., 411 F. Supp. 3d 216 (D. Conn. 2019) ("[I]t is clear that individuals in the workplace reasonably should expect to experience some level of emotional distress, even significant emotional distress, as a result of conduct in the workplace.").

Even if such distress could form the basis of an NIED claim, Ms. Vrabel has not alleged as required, beyond her single improper conclusory allegation, that such damages were foreseeable. See Defs.' Compl. ¶ 69 ("It was foreseeable that Trans Union's failure to take corrective action, including promptly and accurately remedying its data reporting problem, would have significant impacts [sic] on Vrabel's professional and personal reputation."); Iqbal 556 U.S. at 678 (Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Ms. Vrabel has not and cannot allege any required facts to support her statement that it was foreseeable that Trans Union's reporting of Wealthberg's accounts would have a "significant impact" on her professional and personal reputation.

### E. Case Law Holds That Third Plaintiffs' Claims Should Be Dismissed With Prejudice Because Amendment Would Be Futile Since The Facts Would Not Change And There Is No Way That Third-Party Plaintiffs Could Manipulate The Facts To State A Claim.

The decision whether to allow amendment of a complaint is, of course, committed to sound discretion of the district Court. See McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d. Cir 2007). However, while leave to amend under Federal Rule of Civil Procedure 15 should freely be given, a district court has discretion to deny leave for good reason, including futility bad faith, undue delay or undue prejudice to the opposing party. See Forman v. Davis, 371 U.S. 178, 83 S. Ct. 227, 9L. Ed. 2d 222 (1962).

Here, GE and Ms. Vrabel's Third-Party Complaint should be dismissed with prejudice and without leave to amend because there is no way that GE and Ms. Vrabel could manipulate the facts

16

to state breach of contract, indemnification, negligence and NIED claims. As stated above, GE cannot state a cognizable breach of contract claim under Connecticut law because the duty imposed on Trans Union under the Agreement is identical to requirements of the FCRA and GE has not and cannot meet its obligation to provide the grounds of its entitlement to relief. Amendment should further be denied because the contract provides for indemnification <u>by</u> GE Credit Union <u>to</u> Trans Union (not the other way around) and, even if it did not, the reporting claims arise from or relate to the same conduct which gave rise to Ms. Wealthberg's FCRA claims, and case law holds that there is no right to indemnification or contribution under the FCRA.

Additionally, amendment to GE and Ms. Vrabel's negligence claims would be futile as there are no facts that would transform a simple breach of contract into a tort claim. Lastly, amendment is not warranted because it is completely implausible that Trans Union's account reporting would cause a credit furnisher's individual employee to suffer any damages at all, let alone emotional distress likely to lead to illness or bodily harm.

### IV.     <u>CONCLUSION</u>

For all the forgoing reasons, Trans Union respectfully requests that the Court grant Trans Union's Motion, dismiss GE Credit Union's and Elsie Vrabel's Complaint against Trans Union in its entirety, with prejudice, and award Trans Union its fees and costs incurred in defending this action, including reasonable attorneys' fees, along with such other relief as the Court deems equitable and just.

Date:  June 6, 2022    Respectfully submitted,


/s/ Jared D. Brown
Jared D. Brown, Esq. (phv20587)
 (admitted *Pro Hac Vice*)
Schuckit & Associates, P.C.
4545 Northwestern Drive
Zionsville, IN  46077
Telephone:  (317) 363-2400, Ext. 114
Fax:  (317) 363-2257
E-Mail:  jbrown@schuckitlaw.com

*Lead Counsel for Third Party Defendant Trans Union, LLC*
Timothy J. Lee, Esq.  (CT 15118)
Fasano, Ippolito & Lee, LLC
388 Orange Street
New Haven, CT  06511
Telephone:  (203) 787-6555
Fax:  (203) 776-2119
E-Mail:  tlee@fillaw.com

*Counsel for Defendant Trans Union, LLC*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing has been filed electronically on the **6th day of June, 2022**. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's electronic filing.

| | |
|---|---|
| Brian L. Grossman, Esq. bgrossman@rsf-llp.com | Stefan Savic, Esq. ssavic@rsf-llp.com |
| Aubrey E. Blatchley, Esq. ablatchley@grsm.com | Justyn P. Stokely, Esq. jstokely@mccarter.com |
| Thomas C. Blatchley, Esq. tblatchley@gordonrees.com | John R. Williams, Esq. jrw@johnrwilliams.com |

The undersigned further certifies that a true copy of the foregoing was served on the following parties via First Class, U.S. Mail, postage prepaid, on the **6th day of June, 2022**, properly addressed as follows:

| | |
|---|---|
| None. | |

*/s/ Jared D. Brown*
Jared D. Brown, Esq. (phv20587)
 (admitted *Pro Hac Vice*)
Schuckit & Associates, P.C.
4545 Northwestern Drive
Zionsville, IN  46077
Telephone:  (317) 363-2400, Ext. 114
Fax:  (317) 363-2257
E-Mail:  jbrown@schuckitlaw.com

*Lead Counsel for Third Party Defendant Trans Union, LLC*